Filed 2/23/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C069280 |
| Plaintiff and Respondent, | (Super. Ct. No. 06F10311) |
| v. | |
| VICTOR G. QUIROZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Marjorie Koller, Judge. Reversed with directions.

Michelle May Peterson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French, Daniel B. Bernstein, and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

1

In this appeal, we determine whether a trial court has jurisdiction to convene a competency hearing after a state hospital certifies that a defendant, who has been involuntarily confined for three years due to incompetence to stand trial, is not likely to regain competency. We conclude the relevant statutory scheme does not authorize a trial court to hold such a competency hearing. As a result, we hold the trial court in this matter exceeded its jurisdiction when it held a competency hearing for defendant after the state hospital determined he was not likely to regain competence, found him competent, and subsequently pronounced judgment against him. We reverse the judgment.

CASE HISTORY

The substantive facts are not relevant. An information accused defendant of committing assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)),[1] with an enhancement for great bodily injury (§ 12022.7, subd. (a)); and battery with serious bodily injury (§ 243, subd. (d)), with an enhancement for personal use of a weapon (§ 12022, subd. (b)(1)). The information also alleged defendant had previously been convicted of arson (§ 451, subd. (d)), a prior strike conviction under section 667, subdivisions (a) and (e).

The trial court first found defendant incompetent to stand trial in March 2007 and committed him for treatment. In November of that year, the state hospital certified defendant was mentally competent, and criminal proceedings resumed. However, in August 2008, the court again found defendant incompetent to stand trial and committed him for treatment.

The state hospital submitted interim reports in January and August 2009, stating defendant was still incompetent and recommending further treatment. In December 2010, the hospital submitted its final report stating defendant remained incompetent to

---

[1] Undesignated section references are to the Penal Code.

stand trial and was "unlikely to regain competency in the foreseeable future." Based on its no substantial likelihood certification, the hospital recommended that conservatorship proceedings be initiated.

The Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq. (the LPS Act)) authorizes the creation of renewable one-year conservatorships for persons who are gravely disabled as a result of a mental disorder. (Welf. & Inst. Code, §§ 5350, 5361.) The LPS Act provides two alternative definitions of "gravely disabled." One section defines gravely disabled as "[a] condition in which a person, as a result of a mental health disorder, is unable to provide for his or her basic personal needs for food, clothing, or shelter." (Welf. & Ins. Code, § 5008, subd. (h)(1)(A).) The other definition defines gravely disabled as a condition in which a person (1) has been found mentally incompetent under section 1370; (2) was charged with committing a felony involving death, great bodily harm, or a serious threat to the physical well-being of another person; (3) the charges have not been dismissed; and (4) as a result of a mental disorder, is unable to understand the nature and purpose of the proceedings taken against him and to assist counsel in the conduct of his defense. (Welf. & Inst. Code, § 5008, subd. (h)(1)(B).)

A conservatorship imposed under the second definition of "gravely disabled" is "commonly referred to as a 'Murphy conservatorship' after the legislator who sponsored the amendment that added the definition to the [LPS] Act in 1974. (Stats. 1974, ch. 1511, pp. 3316-3324.)" (*People v. Karriker* (2007) 149 Cal.App.4th 763, 775.)

In February 2011, the trial court ordered the public guardian to initiate proceedings for a Murphy conservatorship. However, in April 2011, the public guardian issued a report finding defendant was not currently dangerous, and she declined to file a petition for conservatorship.

The prosecutor requested a hearing to challenge the hospital's no substantial likelihood certification. She also requested the trial court refer the matter back to the public guardian to reconsider its decision not to pursue a Murphy conservatorship, or

3

alternatively to pursue any other LPS Act conservatorship. (Welf. & Inst. Code, § 5000 et seq.) The court again ordered the public guardian to initiate a conservatorship.

In May 2011, defendant filed a motion to be released from custody and to dismiss the information pursuant to sections 1370 and 1385. Defendant contended the court had no authority to hold a competency restoration hearing after three years of state hospital commitment and the hospital's release of its no substantial likelihood certification.

The trial court denied defendant's motion to dismiss. It also ordered a competency hearing. The court stated the Penal Code did not specify whether it could hold a hearing to determine competency after the hospital has issued its no substantial likelihood certification. However, the statutes require a hearing if the hospital issues a certificate of restoration of competency. (§ 1372, subd. (c).) From that fact, the court reasoned: "I can't imagine that if a hearing is contemplated when a hospital makes one finding in one direction of competence that it wouldn't also be contemplated when they suggest that a defendant is incompetent."

In June 2011, the Sacramento County Mental Health Treatment Center evaluated defendant for a conservatorship. It concluded defendant presented a minimum risk of violence to himself or others and did not meet the criteria to be held involuntarily. Based on that report, the public guardian concluded defendant did not meet the criteria for a conservatorship.

A week later, defendant filed in our court a petition for mandate and immediate stay. We denied the petition.

In July 2011, the trial court held the competency hearing. It concluded defendant was restored to competency, and it reinstated criminal proceedings.

Later, the trial court allowed the prosecution to amend the information to include another prior strike conviction and a prior prison enhancement under section 667.5, subdivision (b).

4

On September 8, 2011, defendant pleaded no contest to battery with serious bodily injury. He also admitted the weapon enhancement to that count, one prior strike conviction, and one prior prison term in exchange for a stipulated 10-year prison term and the balance of the information dismissed. The trial court pronounced judgment according to the terms of the plea.

Defendant obtained a certificate of probable cause and timely filed this appeal.

DISCUSSION

Defendant contends the trial court exceeded its jurisdiction when it convened a competency hearing after the hospital had issued its no substantial likelihood certification. We agree. If a defendant is returned to court upon a finding of no substantial likelihood or upon completing the maximum term of commitment, the trial court may determine only whether to initiate Murphy conservatorship proceedings, dismiss the charges against the defendant and order him released from confinement, or dismiss the charges and initiate other appropriate commitment proceedings under the LPS Act. (§ 1370, subds. (c)(2), (e); *In re Davis* (1973) 8 Cal.3d 798, 805-807 (*Davis*).) The court does not have authority to convene a competency hearing at that point.

A person cannot be tried while he is mentally incompetent. (§ 1367, subd. (a).) If a court believes a defendant may be incompetent to stand trial on a felony charge, it must suspend criminal proceedings and convene a hearing on the issue of defendant's competence. (§§ 1368, 1369.) If the defendant is declared incompetent, the court may commit him to a state hospital until he becomes mentally competent. (§ 1370, subd. (a)(1)(B).)

As a matter of federal and state constitutional law, an incompetent defendant may not be committed indefinitely on the sole ground of incompetency. (*Jackson v. Indiana* (1972) 406 U.S. 715, 731-733 [32 L.Ed.2d 435, 447-448] (*Jackson*); *Davis, supra,* 8 Cal.3d at p. 801.) "[N]o person charged with a criminal offense and committed to a state hospital solely on account of his incapacity to proceed to trial may be so confined more

5

than a reasonable period of time necessary to determine whether there is a substantial likelihood that he will recover that capacity in the foreseeable future.  Unless such a showing of probable recovery is made within this period, *defendant must either be released or recommitted under alternative commitment procedures*." (*Ibid.*, italics added.)

Responding to *Jackson* and *Davis*, the Legislature in 1974 amended section 1370 and other competency statutes in order to provide a reasonable period for determining whether a defendant will recover competence.  In summary, the amended statute provides that if, after three years of involuntary commitment, a defendant is not likely to regain competency, he must be returned to the court.  At that point, the court, in compliance with *Davis*, must either order the public guardian to initiate Murphy conservatorship proceedings or release him from custody.  (§ 1370, subds. (c), (d), (e).)[2]

---

[2]     As of the time of the trial court's order in 2011, section 1370 read in relevant part: "(c)(1) At the end of three years from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged in the information, indictment, or misdemeanor complaint, whichever is shorter, a defendant who has not recovered mental competence shall be returned to the committing court.  The court shall notify the community program director or a designee of the return and of any resulting court orders.

"(2) Whenever any defendant is returned to the court pursuant to . . . paragraph (1) of this subdivision and it appears to the court that the defendant is gravely disabled, as defined in subparagraph (B) of paragraph (1) of subdivision (h) of Section 5008 of the Welfare and Institutions Code [the Murphy conservatorship definition], the court shall order the conservatorship investigator of the county of commitment of the defendant to initiate conservatorship proceedings for the defendant pursuant to Chapter 3 (commencing with Section 5350) of Part 1 of Division 5 of the Welfare and Institutions Code [part of the LPS Act].

"[¶] . . . [¶]

"(d) The criminal action remains subject to dismissal pursuant to Section 1385.  If the criminal action is dismissed, the court shall transmit a copy of the order of dismissal to the community program director or a designee.

"(e) If the criminal charge against the defendant is dismissed, the defendant shall be released from any commitment ordered under this section, but without prejudice to the

6

Our Supreme Court explained the process as follows: If a defendant remains committed due to incompetency, he "must be returned to court after (1) three years or (2) the maximum period of imprisonment for the most serious charged offense [whichever is shorter] ([]§ 1370, subd. (c)(1)), or when the director of the treatment facility sooner determines that restoration to competence is unlikely. (*Id*., subd. (b)(1).) If it then appears the accused is 'gravely disabled' under the [LPS Act] because he remains incompetent for trial, is charged by an undismissed indictment or information with a violent felony, and is still dangerous (*id*., § 5008, subd. (h)(2); *Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 176-177 [(*Hofferber*)]), the court must order the commencement of LPS Act conservatorship proceedings (Welf. & Inst. Code, § 5350 et seq.). On the other hand, if the defendant remains incompetent but is not a dangerous accused violent felon, the court must release him from confinement. (*Hofferber, supra*, 28 Cal.3d at pp. 168-169; see *Jackson*[*, supra*, 406 U.S. at pp. 730-738], [*Davis, supra,* 8 Cal.3d at p. 807]." (*People v. Waterman* (1986) 42 Cal.3d 565, 568, fn. omitted (*Waterman*).)

The Supreme Court in *Waterman* continued: "When a defendant is returned to court as unlikely to recover competence, or is still incompetent after maximum confinement, the court may dismiss the charges in the interest of justice. ([]§§ 1370, subd. (d), 1385.) If it does so, defendant must be released from confinement without prejudice to institution of any short-term LPS Act civil commitment proceedings for dangerousness. (*Id*., § 1370, subd. (e).)" (*Waterman, supra,* 42 Cal.3d at p. 568, fn. 1.)

At issue here is whether, upon the defendant's return to court with a no substantial likelihood certification, the court at the prosecution's request may hold a competency

---

initiation of any proceedings that may be appropriate under the [LPS] Act . . . ." (§ 1370, subds. (c), (d), (e); Stats. 2006, ch. 799, § 1 (Assem. Bill No. 2858) pp. 6367-6368.)

7

hearing before either initiating conservatorship proceedings or releasing the defendant. The parties have not directed us to a case on point, and we have found none.

A competency hearing is a special proceeding, not a criminal action. (*People v. Lawley* (2002) 27 Cal.4th 102, 131; *People v. Fields* (1965) 62 Cal.2d 538, 540.) " 'Special proceedings are creatures of statute and the court's jurisdiction in such proceedings is limited by statutory authority [citation].' [Citation.]" (*Paramount Unified School Dist. v. Teachers Assn. of Paramount* (1994) 26 Cal.App.4th 1371, 1387.) " 'As special proceedings are created and authorized by statute, the jurisdiction over any special proceeding is limited by the terms and conditions of the statute under which it was authorized [citation], and . . . [t]he statutory procedure must be strictly followed. [Citations.]' [Citation.]" (*Palm Property Investments, LLC v. Yadegar* (2011) 194 Cal.App.4th 1419, 1425.)

In the amended competency statutes, the Legislature provided for competency hearings in certain circumstances, but not in the circumstance presented by this case. The trial court must convene a competency hearing while the criminal action is pending and the defendant is not under commitment if the court doubts defendant's competency. (§ 1368.) The trial court must convene a competency hearing after the defendant has been committed for 18 months. (§ 1370, subd. (b)(4).) And the trial court may convene a competency hearing when the state hospital certifies the defendant has regained competence. (§ 1372, subd. (c); see *People v. Sakarias* (2000) 22 Cal.4th 596, 617.)

However, nowhere in the statutes did the Legislature authorize a trial court to convene a new competency hearing upon the prosecution's request when the hospital returns defendant from commitment at the end of three years or upon the hospital's finding of no substantial likelihood of regaining competency to stand trial. Nor do the statutes authorize the trial court to convene a competency hearing upon the prosecution's request when the public guardian determines not to initiate conservatorship proceedings.

8

Because the statutes do not authorize such a hearing, the court's convening of one in this instance exceeded its jurisdiction.

The statute's language demonstrates the Legislature did not intend for courts to hold competency hearings upon a defendant's return after completing the maximum commitment. When the Legislature intends the court to hold a competency hearing, it expressly says so. For example, the statute states that after a defendant has been committed for 18 months and remains hospitalized, he "shall be returned to the committing court where a hearing shall be held pursuant to the procedures set forth in Section 1369 [the statute setting forth procedures for a competency trial]." (§ 1370, subd. (b)(4).) However, unlike in subdivision (b)(4), subdivision (c) of section 1370, the subdivision requiring the court upon a defendant's return to order either commencement of conservatorship proceedings or defendant's release, contains no language ordering the court to convene a competency trial. Obviously, if the Legislature had intended a competency trial at that point, it knew how to require one. Its silence in subdivision (c) confirms it did not intend to require a hearing at that point in the competency proceedings. " 'The expression of some things in a statute necessarily means the exclusion of other things not expressed.' [Citation.]" (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1105.)

Marjory Winston Parker, the Deputy Attorney General who worked with the Legislature for 18 months to develop the 1974 amendments to the competency statutes, agreed that no hearing occurs at the end of the three-year period. In her opinion, "if the defendant is still not competent to stand trial, he is again returned to the committing court, which shall order the defendant committed civilly pursuant to the amended LPS Act or released if he is not eligible for a civil conservatorship." (Parker, *California's New Scheme for the Commitment of Individuals Found Incompetent to Stand Trial* (1975) 6 Pacific L.J. 484, 492.) "While the statute contains no express instruction that the defendant will be ordered released, it is apparent that such must be the result because

9

there is no authority allowing further confinement or prosecution of the criminal offense." (*Ibid.*, fn. 70.)

The Attorney General relies upon *Hofferber*, a 1980 Supreme Court case that predated *Waterman*'s 1986 description of the process provided under section 1370, to argue the court must hold a competency hearing upon the defendant's return after a finding of no substantial likelihood. Describing the competency process, the *Hofferber* court wrote: "Under current law a defendant confined for incompetence who has not regained competence must be returned to the superior court after (1) three years, or (2) the maximum term of imprisonment for the most serious underlying offense, whichever is shorter (§ 1370, subd. (c)(1)), or whenever the superintendent of the treatment facility sooner determines there is no substantial likelihood the defendant will attain competence (§ 1370, subd. (b)(1)). *The court then must redetermine competence.* If defendant is competent, criminal proceedings are resumed. If not the court must either release him or order that 'gravely disabled' conservatorship proceedings be instituted under the LPS Act (§ 1370, subd. (c)(2))." (*Hofferber, supra,* 28 Cal.3d at pp. 169-170, italics added, fns. omitted.)

*Hofferber*'s description of the process does not govern this case. Although the trial court in that case held a competency hearing upon the defendant's return following his three-year commitment (*Hofferber, supra,* 28 Cal.3d at p. 166), no one challenged the hearing's propriety on appeal. Rather, *Hofferber* concerned in part whether a defendant for whom a Murphy conservatorship was initiated was entitled to a hearing *in the conservatorship proceedings after a petition for a conservatorship has been filed* on whether he remained dangerous as part of determining whether he was gravely disabled and thus eligible for a conservatorship. It did not concern whether a prosecutor could obtain a competency hearing when the public guardian refuses to file a petition for a conservatorship. The court's statement of the process was not necessary to its decision and thus does not apply here. "In every case, it is necessary to read the language of an

10

opinion in the light of its facts and the issues raised, in order to determine which statements of law were necessary to the decision, and therefore binding precedent, and which were general observations unnecessary to the decision.  The latter are dicta, with no force as precedent.  [Citations.]" (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1301.)

Because the trial court held a competency hearing when it was not authorized to do so, its judgment must be reversed.  Because we reach our conclusion on this ground, we need not discuss defendant's remaining arguments.

DISPOSITION

The judgment is reversed.  The matter is remanded for further proceedings consistent with this opinion.


      NICHOLSON     , J.


We concur:


      BLEASE         , Acting P. J.


      MAURO         , J.