Filed 12/11/17

# IN THE SUPREME COURT OF CALIFORNIA

PATRICK LOWELL JACKSON,

        Petitioner,

        v.

THE SUPERIOR COURT OF
RIVERSIDE COUNTY,

        Respondent;

THE PEOPLE,

        Real Party in Interest.

S235549

Ct.App. 4/2 E064010

Riverside County
Super. Ct. No. INF1500950

A criminal defendant who is found incompetent to stand trial may be involuntarily committed for the purpose of determining if he or she is likely to regain competence. (Pen. Code, § 1370, subd. (a)(1)(B); all undesignated statutory references are to this code.) But the duration of commitment may not exceed " 'the reasonable period of time necessary to determine whether there is a substantial probability that [the defendant] will attain that capacity in the foreseeable future.' " (*In re Davis* (1973) 8 Cal.3d 798, 804 (*Davis*), quoting *Jackson v. Indiana* (1972) 406 U.S. 715, 738 (*Jackson*).)

Guided by *Davis* and *Jackson*, the Legislature has set the maximum period of such commitment at three years. (§ 1370, subd. (c) (§ 1370(c)).) If at that point the defendant does not regain competence and is shown to be "gravely disabled"

within the meaning of the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq. (LPS Act)), then the court must order conservatorship proceedings under the LPS Act (*id.*, § 5350 et seq.). (§ 1370, subd. (c)(2).) Otherwise, the defendant is released. (See *People v. Waterman* (1986) 42 Cal.3d 565, 568 (*Waterman*).)

In this case, defendant Patrick Jackson was found incompetent to stand trial and was involuntarily committed for three years, during which he did not regain competence. Because he was not made the subject of a conservatorship, he was released. Shortly after his release, the Riverside County District Attorney obtained a superseding indictment with identical charges under a new case number, as permitted by section 1387. Jackson was rearrested pursuant to the new indictment. He argues that because he had already been committed for the three years authorized by section 1370(c), the trial court was without power to order his rearrest notwithstanding the prosecution's authority to dismiss and refile charges under section 1387.

We hold that defendants in Jackson's position can be rearrested on charges that are refiled under section 1387. But if the trial court again determines that a defendant is not competent to stand trial, the court is not permitted to ignore the fact that the defendant has already been committed. The defendant may be recommitted only for a period not exceeding the remaining balance, if any, of the three years authorized by section 1370(c). After that, the defendant must be placed under an LPS Act conservatorship if gravely disabled or released if not.

## I.

A criminal defendant cannot be tried if he or she is not competent to understand the nature of the charges or the proceedings, or to rationally assist counsel in the conduct of a defense. (§ 1367, subd. (a).) A defendant who is not competent to stand trial may be involuntarily committed for the purpose of assessing whether he or she is likely to gain competence and, if so, for treatment to

2

that end.  (See *Greenwood v. United States* (1956) 350 U.S. 366, 375.)  But such commitment could conceivably exceed the maximum possible period of incarceration for the charged offense; indeed, prior commitment statutes permitted defendants to be committed indefinitely.  (Former § 1370, as amended by Stats. 1968, ch. 1374, § 2.)

In light of this concern, the high court in *Jackson* held that when a defendant is committed "solely on account of [the defendant's] incapacity to proceed to trial," the duration of commitment may not exceed "the reasonable period of time necessary to determine whether there is a substantial probability that [the defendant] will attain that capacity in the foreseeable future."  (*Jackson*, *supra*, 406 U.S. at p. 738.)  Any longer period of commitment, the high court said, would violate equal protection and due process.  (*Id.* at pp. 730, 731.)  But *Jackson* declined to prescribe "arbitrary time limits" due to differences among states' facilities and procedures for determining competence.  (*Id.* at p. 738.)

One year later, in *Davis*, we adopted *Jackson*'s "rule of reasonableness" and, following the high court's lead, did not set a fixed limit on the time a defendant could be committed for determining competence.  (*Davis*, *supra*, 8 Cal.3d at p. 805.)  We said the reasonableness of a period of commitment depends on "the nature of the offense charged, the likely penalty or range of punishment for the offense, and the length of time the person has already been confined."  (*Id.* at p. 807.)

In response to *Jackson* and *Davis*, the Legislature in 1974 amended the procedures for determining competence.  (See Stats. 1974, ch. 1511, § 6.)  These amendments provided that a trial court, the defendant's attorney, or the defendant can declare a doubt as to the defendant's competence to stand trial, at which point the trial court must suspend proceedings and hold a hearing to determine the defendant's competence.  (§§ 1368, 1369.)  If the defendant is found to be

3

incompetent to stand trial, the court must order the defendant's commitment to an appropriate treatment facility. (§ 1370, subd. (a)(1)(B).) Within 90 days of commitment, the treatment facility must report to the trial court on the defendant's likely progress in regaining competence. (*Id.*, subd. (b)(1).) If the defendant regains competence, criminal proceedings may resume. (*Id.*, subd. (a)(1)(A).) If at any point the treatment facility concludes there is no substantial likelihood that the defendant will regain competence, the defendant is returned to the trial court. (*Id.*, subd. (b)(1)(A).) Otherwise, the defendant may continue to be committed for up to three years or for a period equal to the longest prison term possible for the most serious charge facing the defendant, whichever is shorter. (*Id.*, subd. (c)(1).) At that point, if the defendant has still not regained competence, the defendant is returned to the trial court. (*Ibid.*)

When a defendant is returned to the trial court — either because there is no substantial likelihood that the defendant will regain competence or because the defendant has been committed for the maximum statutory period — the trial court must order the public guardian to initiate LPS Act conservatorship proceedings if the defendant is "gravely disabled" within the meaning of the LPS Act. (§ 1370, subd. (c)(2).) The LPS Act defines a criminal defendant as "gravely disabled" if he or she was found incompetent under section 1370 and: (i) he or she was charged in an information or indictment with a felony involving death, great bodily harm, or a serious threat to the physical well-being of another person; (ii) the information or indictment has not been dismissed; and (iii) as a result of a mental disorder, he or she remains incompetent to stand trial. (Welf. & Inst. Code, § 5008, subd. (h)(1)(B).) Further, the defendant must continue to "represent[] a substantial danger of physical harm to others." (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 176–177.) The resulting conservatorship is commonly referred to as a "Murphy conservatorship" after the legislator who sponsored the

4

amendment adding the definition of "gravely disabled" to the LPS Act. (*People v. Karriker* (2007) 149 Cal.App.4th 763, 775.) If the defendant is not gravely disabled, the defendant must be released (*Waterman*, *supra*, 42 Cal.3d at p. 568), and the trial court may dismiss the action in the interest of justice pursuant to section 1385 (§ 1370, subd. (d); see *Waterman*, at p. 568, fn. 1). Such a dismissal is "without prejudice to the initiation of any proceedings that may be appropriate" under the LPS Act. (§ 1370, subd. (e).)

## II.

In this case, Jackson was charged with sexual misconduct in case number INF061963, filed in Riverside County in May 2008. The trial court declared a doubt as to Jackson's competence to stand trial and suspended criminal proceedings until the resolution of Jackson's competence hearing, which was scheduled for late August 2008. That hearing did not take place because in the intervening period Jackson was charged with having committed similar crimes in San Bernardino County. Although doubts were raised as to Jackson's competence in the San Bernardino case, the parties stipulated that he was competent, and Jackson pled guilty to the San Bernardino charges in February 2010, for which he was given a three-year sentence with credit for time served.

Competency proceedings resumed in the Riverside County case in March 2012. The court declared Jackson incompetent to stand trial on March 29, 2012, and ordered him committed to Patton State Hospital for up to three years under section 1370. In September 2014, the Riverside County public guardian initiated LPS Act conservatorship proceedings for Jackson under Welfare and Institutions Code section 5008, subdivision (h)(1)(A). This provision is different from the one defining Murphy conservatorships; it is intended for persons who are unable to provide themselves with food, clothing, or shelter. The public guardian abandoned those proceedings in May 2015 when it was discovered that Jackson

5

was a resident of San Bernardino County at the time and therefore not under the jurisdiction of the Riverside County public guardian. At that point, the prosecution did not move the court to initiate Murphy conservatorship proceedings because, the prosecution claimed, Jackson did not meet the criteria for such a conservatorship: One of the requirements is that the defendant was charged with a violent felony in an information or indictment (Welf. & Inst. Code § 5008, subd. (h)(1)(B)); Jackson had been charged only in a complaint, and criminal proceedings were suspended before the preliminary hearing. Jackson was released on May 18, 2015.

Three days later, the Riverside County District Attorney obtained a grand jury indictment against Jackson in case number INF1500950, with charges identical to those in INF061963 and arising out of the same alleged conduct, and moved to dismiss the original complaint. Jackson was rearrested. On June 2, 2015, before arraignment, the trial court declared a doubt as to Jackson's competence and suspended criminal proceedings in the new case. Jackson moved for his release on June 30, 2015; when the trial court denied his motion, Jackson sought a writ of mandate from the Court of Appeal. That court denied his petition, and we granted review to determine whether the prosecution can initiate a new competency proceeding by dismissing the original complaint and proceeding on a new charging document after an incompetent defendant has reached the maximum period of commitment provided for under section 1370(c).

### III.

This case involves the interaction between section 1387 and section 1370. Although the text of section 1387 is "hardly pellucid" (*Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1018), it generally permits the prosecution to refile felony charges following dismissal only once. (§ 1387, subd. (a) ["An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to

6

any other prosecution for the same offense if it is a felony . . . and the action has been previously terminated pursuant to this chapter, or Section 859b, 861, 871, or 995 . . . ."].)  This limitation, known as the "two-dismissal rule," was enacted in 1975 in order to prevent harassment of defendants by repeated dismissal and refiling of charges, to limit prosecutorial forum shopping, and to protect defendants' speedy trial rights.  (*Burris*, at p. 1019.)

There are several statutory exceptions to the two-dismissal rule, but none are relevant here.  One exception provides that a dismissal of a felony complaint in favor of an indictment does not count as a termination subject to the two-dismissal rule.  (§ 1387, subd. (c).)  At first glance, this exception would seem to be relevant to this case because the prosecution secured an indictment for the same charges before dismissing the original complaint.  But the rationale for this exception is that an indictment ordinarily continues existing, uninterrupted criminal proceedings that were initiated by the complaint.  (*Berardi v. Superior Court* (2008) 160 Cal.App.4th 210, 222.)  Here, the prosecution did not merely continue prior proceedings; it sought to reinitiate criminal proceedings by having Jackson rearrested and having a new competency hearing.  The District Attorney properly concedes that the dismissal of the original felony complaint in case INF061693 in favor of the indictment in case INF1500950 was a qualifying dismissal subject to the two-dismissal rule.  We proceed on the basis that the dismissal of charges in INF061693 was a termination within the meaning of section 1387, and that the refiled charges constituted the only refiling permitted under section 1387.

Charges refiled after dismissal generally have the effect of starting a criminal proceeding afresh.  Refiling "commences a new period of time" for trial (*People v. Godlewski* (1943) 22 Cal.2d 677, 683), and the defendant is entitled to a new preliminary hearing (*People v. Superior Court (Martinez)* (1993) 19 Cal.App.4th 738, 745) and to exercise a new peremptory challenge to the assigned

judge (*Ziesmer v. Superior Court* (2003) 107 Cal.App.4th 360, 365; *Paredes v. Superior Court* (1999) 77 Cal.App.4th 24, 36). The Legislature codified one exception to this general principle in section 1388, which provides that if the defendant was released on his or her own recognizance on the original charge, the defendant should ordinarily be released on his or her own recognizance on the refiled charge as well. (§ 1388, subd. (c).) From section 1388, we infer that the Legislature knew how to provide for continuity between the original and refiled charges, and that the Legislature otherwise understood that cases "begin[] anew" when charges are refiled. (Sen. Com. on the Judiciary, Analysis of Sen. Bill No. 1721 (1991–1992 Reg. Sess.) as amended Mar. 23, 1992, p. 2 ["Existing law provides for a felony action to be refiled one time . . . . When the case is dismissed, the defendant is re-arrested, re-booked, a new case is filed, and the case processing begins anew."].)

Against this backdrop, we address whether the Legislature intended for a defendant's release following the maximum period of commitment authorized by section 1370 to be a categorical bar to further criminal proceedings, as Jackson argues. Nothing in the text of section 1370 or its surrounding provisions suggests any such intent. To the contrary, section 1368, which triggers a competency hearing under section 1369 followed by commitment under section 1370 if necessary, provides that it applies "during the pendency of an action and prior to judgment." (§ 1368, subd. (a).) This language makes no exception for proceedings that follow the refiling of charges under section 1387. Moreover, section 1372 provides that a defendant who has regained competence during an LPS Act conservatorship should be returned to the court for criminal proceedings to resume. (See § 1372, subd. (b); Welf. & Inst. Code, § 5369.) Section 1372 thus indicates that the Legislature did not understand section 1370(c)'s three-year period of commitment to be a categorical bar to further criminal proceedings.

8

Further, we find nothing in the legislative history of section 1370 that supports Jackson's view.

In *Crockett v. Superior Court* (1975) 14 Cal.3d 433 (*Crockett*), we faced a comparable situation involving the interaction between section 1387 and a statutory provision giving effect to the constitutional right to a speedy trial. There, the trial court dismissed the original charges for failure to prosecute within the time limits established by section 1381. The defendants argued that the prosecution was barred from refiling charges under section 1387 absent a showing of good cause for the delay in prosecuting the original charges. (*Crockett*, at p. 439.) We disagreed, reasoning that section 1387 authorized the prosecution to refile felony charges (at the time, without numerical limitation) and that this grant of authority applies "in an even-handed manner in the case of all dismissals within [section 1387's] purview" regardless of the reason the original charges were dismissed. (*Crockett*, at p. 440.) We thus found no statutory justification for adding a good cause requirement to a refiling otherwise permitted under section 1387. But we noted that section 1387 cannot be read to enable a violation of a defendant's rights. Because a defendant's speedy trial rights may be violated when the defendant is prejudiced as a result of a delay, we held that further prosecution would be barred if the defendant is able to show actual prejudice, even if the refiling was otherwise permitted under section 1387. (*Crockett*, at p. 440 ["[R]efiled charges must . . . be dismissed if the accused can show he is prejudiced by reason of the delay."].)

Here, the Legislature established the three-year maximum in section 1370(c) to protect defendants' due process and equal protection rights not to be committed solely because of incompetence for longer than is reasonable. (See *Jackson*, *supra*, 406 U.S. at p. 738 ["[A] person charged by a State with a criminal offense who is committed *solely* on account of his incapacity to proceed to trial

9

cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." (Italics added.)].) But a defendant who is rearrested after charges are dismissed and refiled as permitted under section 1387 is not being held solely (or even partially) on account of his or her incompetence; that person is being held pending admission to bail. Because such confinement does not implicate the rights the Legislature sought to protect in section 1370(c), there is no reason to believe the Legislature intended section 1370(c) to constrain the "even-handed" application of section 1387. (*Crockett*, *supra*, 14 Cal.3d at p. 440.) We hold that a defendant may be rearrested, and a trial court may order a new competency hearing, following the prosecution's dismissal and refiling of felony charges pursuant to section 1387 even if the defendant was previously committed for three years.

But we also conclude, as we did in *Crockett*, that the authority conferred by section 1387 cannot be used in a manner that violates a defendant's rights. In this instance, the Legislature has determined that a defendant's rights under *Jackson* are protected by limiting commitment for the purpose of determining or restoring competence to no more than three years. Although the Legislature's judgment does not conclusively establish the boundaries of constitutional reasonableness, it does indicate that the Legislature did not intend for the trial court to ignore the fact of the defendant's prior commitment should charges be refiled. Accordingly — as the District Attorney concedes — if the defendant, after rearrest, is again found incompetent to stand trial, the defendant may be further committed for evaluation or treatment only for the balance of the time remaining under section 1370(c), if any. (See *In re Polk* (1999) 71 Cal.App.4th 1230, 1232 [holding that the three-year time limit in section 1370(c) applies to the aggregate of all previous commitments, not only to the present commitment].) A contrary rule would

10

permit a new three-year period of commitment every time charges are dismissed and refiled, with the upshot that a defendant could be committed for up to six years for most felonies and up to nine years for violent felonies. Nothing in section 1370(c), its surrounding provisions, or its legislative history suggests that the Legislature intended to allow the statute's three-year limit on commitment to be so easily evaded. If, as here, the defendant was already committed for the maximum period of time allowed under section 1370(c), the trial court's options would be limited to initiating Murphy conservatorship proceedings or again ordering the defendant released. And if the defendant is released and the charges again dismissed, the prosecution would ordinarily be barred by section 1387 from refiling the charges, absent a statutory exception.

In arguing that he could not be rearrested at all, Jackson relies principally on *People v. Quiroz* (2016) 244 Cal.App.4th 1371 (*Quiroz*). In that case, the Court of Appeal held that a trial court may not hold a new competency hearing following the defendant's return to court at the end of a three-year period of commitment pursuant to section 1370(c). (*Quiroz*, at p. 1377.) The court explained that competency hearings are special proceedings that must be statutorily authorized, and that the Legislature has indicated when a competency hearing is warranted. (*Id.* at pp. 1379–1380.) Because section 1370 does not provide for a redetermination of competence at the end of a defendant's period of commitment when the defendant does not regain competence, *Quiroz* reasoned, the trial court in that case acted in excess of its jurisdiction when it held a competency hearing on the defendant's return to court. (*Quiroz*, at p. 1382.)

We express no view on whether *Quiroz* was correctly decided because that case does not help Jackson. *Quiroz* held only that a court may not hold a competency hearing absent some statutory basis for doing so; it does not hold, as Jackson maintains, that no further proceedings of any kind are permitted once a

11

defendant has been committed for three years. Indeed, *Quiroz* recognized that section 1372 provides for a competency hearing if there is an indication that the defendant has regained competence during a Murphy conservatorship imposed after having been committed for three years. (*Quiroz, supra*, 244 Cal.App.4th at p. 1380.) *Quiroz* is therefore not applicable where there *is* a statutory basis for holding a competency hearing. Here, the prosecution refiled charges as permitted by section 1387, and Jackson was rearrested. The trial court then declared a doubt as to Jackson's competence under section 1367 and proposed to hold a competency hearing pursuant to section 1368. The refiled charges and the ensuing arrest provided the required statutory basis for a new competency hearing. At the same time, although there is no statutory provision that explicitly establishes the maximum time a defendant can be held in custody under these circumstances, we underscore that a defendant can be held only for a reasonable time pending the new competency hearing. Holding a defendant indefinitely would circumvent section 1370(c)'s three-year maximum for commitment.

Finally, we note that adopting Jackson's rule forbidding any further proceedings once a defendant has been committed for three years would mean that a defendant who was released pursuant to section 1370(c) would forever be immune to criminal prosecution for the alleged offense, even if the defendant were to regain competence after release. There is no indication that the Legislature intended such an outcome. Because section 1387 limits the number of times the prosecution may dismiss and refile charges, the prosecution bears the risk of accurately determining whether a released defendant in Jackson's position has sufficiently regained competence.

**CONCLUSION**

We affirm the judgment of the Court of Appeal.

**LIU, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**MCGUINESS, J.***

---

*     Administrative Presiding Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Jackson v. Superior Court

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 247 Cal.App.4th 767
**Rehearing Granted**

_____

**Opinion No.** S235549
**Date Filed:** December 11, 2017

_____

**Court:** Superior
**County:** Riverside
**Judge:** Mark E. Johnson

_____

**Counsel:**

Steven L. Harmon, Public Defender, and Laura Arnold, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Michael A. Hestrin, District Attorney, Elaina G. Bentley, Assistant District Attorney, Kelli M. Catlett, Chief Deputy District Attorney, Ivy Fitzpatrick, Natalie M. Lough and Matt Reilly, Deputy District Attorneys, for Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Laura Arnold
Deputy Public Defender
30755-D Auld Road, Suite 2233
Murrieta, CA  92563
(951) 304-5651

Natalie M. Lough
Deputy District Attorney
3960 Orange Street
Riverside, CA  92501
(951) 955-5400