Filed 9/15/25 Certified for Publication 10/3/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br>            Plaintiff and Respondent,<br>v.<br><br>DEWAYNE KEITH PARKER,<br>            Defendant and Appellant. | A172850<br><br>(Napa County Super. Ct.<br>No. 22CR001834) |

Dewayne Keith Parker was found incompetent to stand trial in two criminal cases simultaneously pending in different counties — Fresno and Napa.  (Pen. Code, §§ 1368, 1370; undesignated statutory references are to this code.)  After he was restored to competency, the State Department of State Hospitals (Department) discharged him to Fresno County.  More than one and a half years later — after Parker was arrested on a Napa County bench warrant — Napa County Superior Court (Napa court) held a restoration hearing, again finding him incompetent to stand trial.  Relying on equitable tolling principles, the court tolled the two-year maximum commitment period for his Napa County charges during the time he was in competency and criminal proceedings in Fresno County.  On appeal, he contends this was error and violated his due process and equal protection rights.  We disagree and affirm.

1

## BACKGROUND

Parker had criminal cases — including charges for murder, burglary, and other crimes — pending in Fresno County Superior Court (Fresno court). On October 27, 2021, that court admitted him to the Napa State Hospital after finding him incompetent to stand trial. (§§ 1368, 1370.) On August 31, 2022, after an alleged assault on a peer at the hospital, the Napa County District Attorney filed a complaint charging Parker with, among other things, assault by means likely to produce great bodily injury and alleging he personally inflicted great bodily injury.

Defense counsel expressed doubt regarding Parker's competence to stand trial, and the Napa court suspended criminal proceedings. The court found him incompetent to stand trial on January 17, 2023, and it committed him to the Department. Less than two months later, on March 2, 2023, the Department certified to both counties that competence had been restored. (§ 1372.) It noted he had a "primary commitment in Fresno County," and it accordingly discharged him there.

Relying on the certificate of restoration, the Napa court held a competency hearing in March 2023 at which Parker did not appear — he was in Fresno County based on his charges there. The Napa court issued a no-bail bench warrant for his arrest. According to the prosecutor in Napa, the Fresno court reinstated its criminal proceedings only to suspend them again due to doubts regarding his competence. Counsel further vaguely represented that Fresno County subsequently dismissed the complaint and refiled the charges. After he was arrested on November 26, 2024 on the bench warrant, and transported to Napa County, the court again ordered a report regarding his competency because the March 2023 certificate of restoration was stale. The restoration hearing was continued twice at

2

defense counsel's request: an informal request to continue from November 27, 2024 to December 5, 2024, and a formal motion to continue from January 16, 2025 to January 31, 2025.

On January 31, 2025, the Napa court rejected the certificate of restoration and found Parker incompetent to stand trial. It also rejected his argument that the two-year maximum commitment period expired on January 17, 2025, and it consequently denied his request to either initiate conservatorship proceedings or release him. Rather, the court concluded the period from March 2, 2023 to November 25, 2024 — the 635 days Parker was in Fresno County — tolled the commitment period. It set his new commitment expiration date as October 24, 2026.

## DISCUSSION

The parties dispute whether the trial court may toll the two-year maximum commitment period for Parker's Napa County criminal charges during the time he was in ongoing proceedings in Fresno County. He contends the competency scheme contains detailed instructions for calculating the maximum commitment period for defendants found incompetent to stand trial and does not authorize tolling. Extending his commitment period to October 2026, he argues, violated his due process and equal protection rights. The People argue — in the absence of any explicit statutory authority *or* prohibition — that tolling the commitment period is an appropriate exercise of the court's inherent equitable powers. After independently examining this issue of law, we conclude the People have the better argument. (*People v. Superior Court* (*Sokolich*) (2016) 248 Cal.App.4th 434, 441.)

Defendants who are mentally incompetent to stand trial may not be tried, convicted, or punished. (U.S. Const., 14th Amend.; Cal. Const., art. I,

3

§§ 7, 15; *Persiani v. Superior Court* (2024) 100 Cal.App.5th 48, 57.)  A court must order a competency hearing when a doubt arises regarding the defendant's competence — i.e., whether "if, as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."  (§§ 1367, subd. (a), 1368, subd. (a); *Rodriguez v. Superior Court* (2023) 15 Cal.5th 472, 493 (*Rodriguez I*).)  The order suspends the criminal proceedings, which only resume if the court finds the defendant competent.  (§ 1370, subd. (a)(1)(A).)  Upon a finding the defendant is incompetent, the court must issue a commitment order to an appropriate treatment program to promote the defendant's speedy restoration to mental competence.  (*Id.*, subd. (a)(1)(B)(i), (C).)  Where a defendant is charged with an offense that has a maximum sentence exceeding two years — as here — the maximum length of a commitment is two years.  (*Id.*, subd. (c)(1).)

Upon determining the defendant has regained competence, the designated medical professional must "immediately certify that fact to the court by filing a certificate of restoration with the court."  (§ 1372, subd. (a)(1).)  The defendant must be "returned to the committing court" within 10 days of the filing and 90 days before the expiration of the maximum two-year commitment term.  (§§ 1372, subd. (a)(3)(C), 1370, subd. (c)(1).)  The court must determine, after a hearing, whether the defendant has regained competence.  (*People v. Murrell* (1987) 196 Cal.App.3d 822, 826; § 1372, subd. (c)(1).)  The court may reject the certificate of restoration and, if the maximum commitment period has not been reached, return the defendant to a treatment facility.  (§ 1370, subd. (a)(1)(B); *Rodriguez I, supra*, 15 Cal.5th at p. 495.)  If the maximum commitment period has been reached, the court must initiate conservatorship proceedings if it appears the defendant is

gravely disabled within the Lanterman-Petris-Short Act (LPS Act; Welf. & Inst. Code, § 5000 et seq.). (§ 1370, subd. (c)(3); Welf. & Inst. Code, § 5008, subds. (h)(1)(A)–(B)(iv).) Otherwise, the court must release the defendant and may, but is not required to, dismiss the criminal action under section 1385. (*Jackson v. Superior Court* (2017) 4 Cal.5th 96, 102.)

This competency scheme contains specific timelines for returning a defendant to court upon the filing of a certificate of restoration. (See, e.g., §§ 1370, subd. (c)(1) [requiring defendant's return to court 90 days before expiration of maximum commitment term], 1372, subd. (a)(3)(C) [return to court within 10 days of certificate].) But section 1372 does not expressly address counting time for section 1370's maximum commitment period when a defendant is certified as restored to competency. Only recently, the Supreme Court held that issuing a certificate of restoration does not pause the two-year commitment period. (*Rodriguez I, supra*, 15 Cal.5th at p. 498.) Rather, the clock "continues past the filing of the certificate, through the court's decision whether to accept the certificate." (*Id*. at pp. 517, 498.)

More importantly, the statutes do not address whether section 1370's two-year maximum commitment period can be tolled. (*Rodriguez v. Superior Court* (2024) 103 Cal.App.5th 601, 625 (*Rodriguez II*).) Nor do they address calculating the commitment period for a defendant subject to multiple, concurrent criminal and competency proceedings — the statutory scheme indicates the Legislature only contemplated commitment proceedings in a single court. For example, the medical provider must certify restoration of competency "to *the* court." (§ 1372, subd. (a)(1), italics added.) And the patient must be redelivered "to the sheriff of *the* county from which the patient was committed." (*Id*., subd. (a)(3)(A), italics added.) By using "the" — a definite article — rather than "a" — an indefinite article signaling

5

a general reference — the statute refers to one specific court or county, not concurrent commitments in different counties. (*Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1396.)

But critically, we see nothing in the competency scheme — nor does Parker identify anything — precluding a court from pausing "the running of the commitment period due to delays in holding the restoration hearing." (*Rodriguez II*, *supra*, 103 Cal.App.5th at p. 625.) Indeed, section 1372 — requiring courts to provide the Department "any minute orders continuing the [restoration] hearing for the court's determination" — acknowledges continuances can occur. (§ 1372, subd. (c)(2); *Rodriguez II*, at pp. 625–626.) This "acknowledgment suggests that continuances of the restoration hearing can affect the running of the two-year time limit." (*Rodriguez II*, at p. 626.) If "the Legislature had intended to preclude any pause in the running of the commitment period due to delays in holding the restoration hearing, 'it could have done so expressly.' " (*Id.* at p. 625.)

Tolling the commitment period based on the court's " 'inherent power to control litigation' " — a power that includes exercising "reasonable control over all proceedings connected with pending litigation to ensure the orderly administration of justice" — is appropriate here. (*Rodriguez II*, *supra*, 103 Cal.App.5th at p. 625.) It includes the " 'power to postpone for good cause the time of hearing, unless prohibited by positive law.' " (*Ibid.*) This power is " 'not confined by or dependent on statute,' " as Parker insists. (*Ibid.*) A court's inherent power applies precisely because there is *no* statute or Judicial Council rule identifying the power to pause the commitment period on particular charges in one court during the pendency of criminal or competency proceedings in another court. (*Ibid.*)

6

The issue presented here is distinguishable from *People v. Quiroz* (2016) 244 Cal.App.4th 1371. There, the court determined competency hearings are special proceedings authorized only by statute, indicating the Legislature expressly prescribed when such hearings are warranted. (*Id.* at pp. 1379–1380.) By convening a new competency hearing once the defendant returned to court *after* the expiration of the three-year commitment period[1] — something not authorized by statute — the trial court exceeded its jurisdiction. (*Quiroz*, at p. 1382.) Here, where the statutes and rules of court do not provide " 'an applicable procedure,' " a court may " 'substitute a procedure it has itself devised.' " (*Rodriguez II*, *supra*, 103 Cal.App.5th at p. 625.) We see nothing in the statutes indicating the Legislature intended to preclude the application of equitable doctrines such as tolling.

Like the court in *Rodriguez II*, we draw on speedy trial principles to determine whether pausing Parker's commitment period is appropriate. (*Rodriguez II*, *supra*, 103 Cal.App.5th at pp. 628–629.) Section 1370's maximum commitment period — intended to protect a defendant committed solely due to incompetency to stand trial from being held more than the reasonable period of time for determining whether there is a substantial probability of regaining capacity — and the right to a speedy trial — intended "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired" — serve similar interests. (*Barker v. Wingo* (1972) 407 U.S. 514, 532; *Jackson v. Indiana* (1972) 406 U.S. 715, 738; §§ 1381, 1382 [provisions implementing speedy trial right and generally requiring trial

---

[1] Prior versions of section 1370 set the maximum commitment period of three years for a defendant found incompetent to stand trial. (Stats. 2015, ch. 260, § 1.)

7

within 60 days of arraignment].)  In the speedy trial context, trials may be extended beyond the statutory timelines upon a demonstration of good cause. (*People v. Sutton* (2010) 48 Cal.4th 533, 545.)  Whether good cause exists "depends upon the circumstances of the case."  (*Rhinehart v. Municipal Court* (1984) 35 Cal.3d 772, 781.)  For example, continuances requested by the defense or when it could aid the defendant's representation constitute good cause and weigh against finding speedy trial violations.  (*Rodriguez II*, at p. 628.)[2]

The "pendency of another trial necessarily constitutes good cause" for delaying a trial.  (*People v. Gates* (1987) 43 Cal.3d 1168, 1192 [rejecting constitutional speedy trial claim where "defendant could not have been in two places at once"], disapproved on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459; *People v. Boggs* (1985) 166 Cal.App.3d 851, 856 [tolling 90-day limitations period for trial under § 1381 in one county when the defendant is "detained in trial proceedings in another"]; *People v. Watts* (1969) 274 Cal.App.2d 755, 762 [no speedy trial violation where Orange County and Los Angeles County had successive rather than simultaneous criminal proceedings on separate charges in those jurisdictions]; see *People v. Bradford* (1976) 17 Cal.3d 8, 19 [preindictment delay "justified by the necessity of awaiting termination of the federal and Los Angeles proceedings"].)

---

[2] Here, defense counsel requested and was granted two continuances: an informal request from November 27, 2024 to December 5, 2024, and a formal motion to continue the restoration hearing from January 16, 2025 to January 31, 2025.  At minimum, the commitment period time is thus appropriately tolled for 25 days to account for these defense-requested continuances.  (*Rodriguez II, supra*, 103 Cal.App.5th at p. 627.)

Consistent with these cases, we conclude the delay in holding a restoration hearing in Napa County due to the pendency of Parker's criminal proceedings on entirely separate charges in Fresno County constitutes good cause for tolling the maximum commitment period. After filing the restoration of competency certificate in both Napa and Fresno courts, the Department transferred Parker to Fresno County in March 2023 because he had a "primary commitment" there. This rendered him unavailable for the March 2023 competency hearing in Napa County. (§ 1372, subd. (c)(1).) As Parker concedes, the only reason the Napa hearing did not occur was because he was in Fresno County custody. The Napa court then issued a no-bail bench warrant to secure his return. But he was not returned to Napa County until November 26, 2024, after he was arrested in Fresno County on the Napa warrant. It was reasonable for the Napa court to forgo a competency hearing parallel to ongoing criminal and competency proceedings in Fresno County. (*Crockett v. Superior Court* (1975) 14 Cal.3d 433, 441 [no presumption of prejudice in speedy trial context where district attorney failed to bring matter to trial in 90-day period due to parallel prosecution in separate county]; compare with *People v. Litmon* (2008) 162 Cal.App.4th 383, 405, 412 [court and prosecutor 11-month delay in retrying sexually violent predator after mistrial on one set of charges violated due process rights].)

Tolling section 1370's two-year limit here is not inconsistent with the Legislature's purpose in creating a maximum term of commitment — "to limit the period of detention due to incompetency and provide certainty regarding the length of that detention period." (*Rodriguez I, supra,* 15 Cal.5th at p. 506.) The two-year commitment period applies to "the aggregate of all commitments on *the same charges*," not an aggregate of all time spent detained due to criminal proceedings or a commitment for

9

incompetency in separate, unrelated charges. (*In re Polk* (1999) 71 Cal.App.4th 1230, 1238, italics added.) The Napa court tolled the period of March 2, 2023 to November 25, 2024, the time when Parker was in proceedings on charges in Fresno County. The court then calculated October 24, 2026 as the expiration date for his Napa County commitment — the aggregate of his commitments on his Napa County charges. (*Ibid.*) Doing so ensures Parker is not detained indefinitely "solely because of incompetence" while the criminal process is suspended (*Jackson v. Superior Court*, *supra*, 4 Cal.5th at p. 105), while allowing time to see if competency can be restored.[3] If, by that date, Parker has not regained competence and is shown to be gravely disabled within the LPS Act, the court must order conservatorship proceedings or otherwise release him. (*Jackson*, at p. 100; § 1370, subds. (c)(3)–(4).) In sum, the trial court did not improperly toll Parker's maximum commitment period to account for the time he was unavailable due to the proceedings in the Fresno court.[4]

---

[3] This result appears no different from the circumstances in *Jackson* had the prosecution dismissed the charges against Parker and refiled them. (*Jackson v. Superior Court*, *supra*, 4 Cal.5th at p. 104 ["a defendant's release following the maximum period of commitment authorized by section 1370" is not a "categorical bar to further criminal proceedings"].) In that case, the defendant was involuntarily committed for the then maximum period of three years after being found incompetent to stand trial. (*Id.* at p. 100.) He was released, but the "prosecution refiled charges as permitted by section 1387, and Jackson was rearrested." (*Id.* at p. 107.) The new charges — for the same offense — "provided the required statutory basis for a new competency hearing" as the trial court again expressed doubt regarding the defendant's competence. (*Ibid.*) But if again found incompetent to stand trial, "the defendant may be further committed for evaluation or treatment only for the balance of the time remaining under section 1370(c), if any." (*Id.* at p. 106.)

[4] We reject the People's request, made for the first time on appeal, to extend Parker's commitment period by an additional 25 days to reflect the continuances requested by defense counsel.

We reject Parker's argument that tolling the commitment period violates his due process rights — that he is entitled to the least restrictive alternative for treatment, requiring a conservatorship rather than treatment in a state hospital. Leaving aside his failure to raise this issue below, he does not cite anything in the record to support his claim. (*People v. Partida* (2005) 37 Cal.4th 428, 436–437 [addressing narrow due process argument on appeal despite failure to raise it in the trial court when predicated on an issue raised below].) And we disregard his factual contentions unsupported by citations to the record or outside the record. (*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520.)

As for Parker's claim that the trial court's ruling violated his equal protection rights — that by tolling his commitment period, the court treated him differently from defendants found not guilty by reason of insanity and sexually violent predators — we decline to address it due to his failure to raise it below. (*People v. Barner* (2024) 100 Cal.App.5th 642, 662–663.) Parker argues the failure to raise the issue constitutes ineffective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) He fails to demonstrate his counsel's performance was deficient. Reversal for ineffective assistance is only warranted if "the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission," counsel "was asked for a reason and failed to provide one," or "there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) "All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*Ibid.*) Here, there is no indication in the record regarding counsel's failure to assert an equal protection claim. Counsel could have reasonably concluded *Rodriguez II* — rejecting the argument that reading tolling provisions into the competency scheme violates the equal

11

protection rights of defendants found incompetent to stand trial ——
conclusively decided the issue and raising it would be futile. (*Rodriguez II*,
*supra*, 103 Cal.App.5th at pp. 628–629.) Parker contends his trial counsel
"could have had no conceivable legitimate tactical purpose" for failing to raise
the issue. The record, however, fails to affirmatively demonstrate the
absence of any rational tactical basis for this decision.

## DISPOSITION

The order is affirmed.

_____
RODRÍGUEZ, J.

WE CONCUR:


_____
TUCHER, P. J.


_____
PETROU, J.


A172850; *People v. Parker*

13

Filed 10/3/25 after filing
unpublished opinion 9/15/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br>    Plaintiff and Respondent,<br>v.<br><br>DEWAYNE KEITH PARKER,<br>    Defendant and Appellant. | A172850<br><br>(Napa County Super. Ct.<br>No. 22CR001834) |

**ORDER CERTIFYING OPINION FOR PUBLICATION
[NO CHANGE IN JUDGMENT]**

**THE COURT\*:**

The opinion in this appeal, filed on September 15, 2025, was not certified for publication in the Official Reports. For good cause appearing, pursuant to California Rules of Court, rule 8.1105(b) and (c), the opinion is certified for publication. Accordingly, the Attorney General's request for publication is GRANTED.

The order effects no change in the judgment.

Dated:  10/3/2025  　　　　　　　　Tucher, P.J. 　　　　　　　, P. J.

_____

    \* Tucher, P. J., Petrou, J., and Rodríguez, J. participated in the decision.

1

Superior Court of Napa County, Hon. Scott Young

Rodney Richard Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Donna M. Provenzano and Andrew Haney, Deputy Attorneys General, for Plaintiff and Respondent.