# IN THE SUPREME COURT OF CALIFORNIA

MARIO RODRIGUEZ,

Petitioner,

v.

THE SUPERIOR COURT OF SANTA CLARA COUNTY,

Respondent;

THE PEOPLE,

Real Party in Interest.

S272129

Sixth Appellate District

H049016

Santa Clara County Superior Court

C1647395, C1650275

---

December 14, 2023

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Jenkins, and Evans concurred.

---

RODRIGUEZ v. SUPERIOR COURT

S272129


Opinion of the Court by Guerrero, C. J.


A criminal defendant cannot be tried while mentally incompetent. (Pen. Code, § 1367, subd. (a).)[1] Although such defendants may be involuntarily committed for the purpose of restoring their competency (see § 1370; *Jackson v. Superior Court* (2017) 4 Cal.5th 96, 100–101), the commitment may not last indefinitely (§ 1370, subd. (c)(1); *Jackson v. Indiana* (1972) 406 U.S. 715, 720; *In re Davis* (1973) 8 Cal.3d 798, 801 (*Davis*)). The statutory scheme governing competency proceedings limits the term of commitment. For individuals like defendant Mario Rodriguez charged with offenses that carry a maximum sentence exceeding two years, the period of commitment due to incompetency is limited to two years. (See § 1370, subd. (c)(1).)

In this case, Rodriguez was adjudged incompetent, committed to a state hospital, and then returned to court when a medical director of the hospital filed a certificate indicating he was restored to competency. (See § 1372, subd. (a)(1).) The certificate was filed within the two-year time limit specified by section 1370, subdivision (c)(1) (section 1370(c)(1)). By statute, the court was supposed to determine whether to approve the certificate — that is, decide "whether or not" Rodriguez has

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

"recovered competence." (§ 1372, subd. (c)(1).) However, primarily because of restrictions on court operations due to the COVID-19 pandemic, Rodriguez did not receive such a hearing within the two-year period of section 1370(c)(1). Claiming the time for commitment had run out, Rodriguez moved to dismiss the charges against him. The Court of Appeal rejected his claim. It held that time had not run out because a commitment ends when a certificate of restoration is filed, not when the court determines whether the defendant has been restored to competence. (*Rodriguez v. Superior Court* (2021) 70 Cal.App.5th 628, 652 (*Rodriguez*).)

The parties ask us to resolve a question of statutory interpretation: For purposes of calculating the maximum commitment period under section 1370(c)(1), does an incompetency commitment end when the medical treatment provider informs the court that the defendant has regained competency by filing a certificate of restoration, or does the commitment end only when the court has determined whether the defendant has been restored to competency? We resolve this question by determining whether the period between the filing of the certificate, and the court's ruling on that certificate, is covered by section 1370(c)(1)'s two-year limit. And we conclude this period is not excluded from the two-year limit.

Because we reject the Court of Appeal's conclusion that an incompetency commitment ends with the filing of a certificate of restoration, we reverse the judgment of the Court of Appeal. We remand with instructions for the Court of Appeal to consider issues that remain outstanding, including whether Rodriguez's aggregate commitments have exceeded the limit set by section 1370(c)(1) and what remedy he may be entitled to if the limit has been exceeded. (See, e.g., *Camacho v. Superior Court* (2023)

15 Cal.5th 354, 382–390 & fn. 5 (*Camacho*); *Jackson v. Superior Court*, *supra*, 4 Cal.5th at p. 106.)

## I. FACTUAL AND PROCEDURAL BACKGROUND

In December 2016, the Santa Clara County District Attorney charged Rodriguez with several felonies, each carrying a maximum sentence in excess of two years imprisonment. The charged offenses included assault with a deadly weapon (§ 245, subd. (a)(1) [maximum punishment of four years in state prison]); oral copulation by force, violence, duress, menace, or fear (§ 287, subd. (c)(2)(A) [maximum punishment of eight years in state prison]); rape by force, violence, duress, menace, or fear (§§ 261, subd. (a)(2), 264, subd. (a) [eight years]); and infliction of corporal injury on a present or former spouse, or a present or former cohabitant (§ 273.5, subd. (a) [four years]). Rodriguez was held to answer on all charges.

In late 2017, the court declared a doubt as to Rodriguez's competency, ordered a hearing regarding his competency, and suspended all proceedings. In May 2018, the court found Rodriguez not competent to stand trial. On May 24, the court issued its commitment order, directing that Rodriguez "be committed to the [State] Department of State Hospitals for placement in a locked psychiatric facility." The order specified that "[t]he Sheriff shall redeliver the patient to the Court upon receiving from the state hospital a copy of the certification of mental competency." (See §§ 1370, subd. (a)(1)(C), 1372, subd. (a)(2).) The court also ordered the State Department of State Hospitals (Department) to "provide a placement for defendant for treatment of his mental illness and restoration of competency by 5:00 p.m., June 29, 2018" and that Rodriguez be transported to his placement by that date. The record does not

indicate when Rodriguez was actually transported or admitted to a state hospital.

On September 7, 2018, the medical director of Atascadero State Hospital certified Rodriguez as restored to competency. The parties stipulated that the certificate of restoration was filed with the superior court the same date. On September 20, the court found Rodriguez had been restored to competency and reinstated criminal proceedings.

In early January 2019, the court declared a new doubt as to Rodriguez's competency to stand trial and again suspended criminal proceedings. In April, the court found Rodriguez not competent.

On May 16, 2019, the court issued a second commitment order, once more directing that Rodriguez be committed to the Department. As before, the court specified a date by which the Department was to provide a placement for Rodriguez, setting that date as June 14, 2019. The court further noted in its commitment order that it found Rodriguez did "not have the capacity to consent to treatment with antipsychotic medication," and it ordered the involuntary administration of antipsychotic medication.

On January 9, 2020, the medical director of Atascadero State Hospital certified that Rodriguez was restored to competency. The parties stipulated the certificate of restoration was filed with the superior court the same date. Among the documents transmitted to the court, the medical director included a letter stating that Rodriguez was "being returned to court on psychotropic medication." "It is important," continued the director, "that [Rodriguez] remain on this medication for his own personal benefit and to enable him to be certified [as

competent] under Section 1372 of the Penal Code." The date when Rodriguez was discharged from the state hospital does not appear in the record. (*Rodriguez*, *supra*, 70 Cal.App.5th at p. 638.)

On January 24, 2020, the court set May 21 as the date for a contested hearing on Rodriguez's competency. In March, the court suspended almost all its operations due to the COVID-19 pandemic. As a result, the competency hearing set for May 21 did not take place.

On July 17, 2020, the parties returned to court following the relaxation of certain COVID-19 restrictions. The court rescheduled the competency hearing for August 24, a date later reset to September 21 at the request of both parties. The hearing did not occur on that date either. Instead, the court continued the hearing to November 2 "due to the COVID-19 pandemic and the lack of courtrooms and court resources available." The court subsequently continued the competency hearing several times due to the "pandemic and the [s]uperior [c]ourt's limited trial capacity."

In March 2021, Rodriguez filed a motion to dismiss. Even though the Department had timely determined that he was competent to stand trial, Rodriguez argued that he was entitled to a dismissal because his commitment had lasted more than two years. Rodriguez contended a commitment must be measured based on "dates from one judicial decision until a second judicial decision" — in this case, from the date when the court issued the commitment order to the date when it eventually approved or rejected the certificate of restoration. Rodriguez thus argued his total commitment period — counting days from his first and second commitments — exceeded two

years and was ongoing. (See *In re Polk* (1999) 71 Cal.App.4th 1230, 1232 (*Polk*) [holding that the limit on a commitment term "applies to the aggregate of all commitments under the same charges"].)

On March 16, 2021, the trial court denied the motion to dismiss, reasoning that it had to first determine whether Rodriguez had regained competency before it could ascertain whether the statutory two-year limit had been reached. The court explained, "the days between the restoration certificate and the restoration hearing [would] only count towards the two-year maximum commitment if, in fact, it is determined that the defendant is not restored to competence." If instead "the defendant is [judicially determined to be] restored to competence," the court continued, "then the date on the certificate of restoration will serve as the date of restoration for purposes of counting the days towards the maximum commitment." After the court announced its decision, Rodriguez's counsel asked for a continuance, requesting that the court sign an order so that counsel could receive Rodriguez's updated mental health records related to his recent placement on "24-hour hold" and "suicide watch" while in county jail.

Between the date of the second commitment order and the court's decision on March 16, 2021, a total of 670 days had elapsed. When combined with the period between the first commitment order and the court's decision on September 2, 2018, finding Rodriguez restored to competency, 789 days — or more than two years — had passed. In contrast, if a commitment were deemed to begin with a commitment order and end upon the filing of a certificate of restoration, Rodriguez had been committed for a total of 344 days — or less than one year — during the two commitments.

Rodriguez challenged the trial court's denial of his motion to dismiss by filing a petition for writ of prohibition in the Court of Appeal, raising the same argument he presented in the trial court. The Court of Appeal rejected the argument, agreeing with the People that Rodriguez's commitment ended when the certificate of restoration was filed. (*Rodriguez*, *supra*, 70 Cal.App.5th at p. 636.) Unlike the trial court, the Court of Appeal concluded that the filing of the certificate of restoration terminates a commitment regardless of whether the court subsequently approves or rejects the certificate. (See *id.* at pp. 635–636.)

In reaching its decision, the Court of Appeal disagreed with *People v. Carr* (2021) 59 Cal.App.5th 1136 (*Carr*), which held that a judicial determination of competency, "not a health official's certification of competency that initiates court proceedings to consider whether the defendant has regained competency, terminates the defendant's commitment." (*Id.* at p. 1140; *Rodriguez*, *supra*, 70 Cal.App.5th at p. 652.)

We granted review to resolve the split in authority. We now reject the Court of Appeal's holding that the two-year clock set by section 1370(c)(1) stops with the filing of a certificate of restoration.

## II. DISCUSSION

To determine whether the running of the clock set by section 1370(c)(1) continues past the filing of a certificate of restoration, we provide an overview of the relevant statutory framework, and then analyze the text of the governing statute and the context, history, and purpose of the competency scheme.

### A. The Competency Statutory Scheme

#### 1. *Pre-1974*

A defendant is mentally incompetent to stand trial if "as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a).) Prior to 1974, "California law provided that persons charged with criminal conduct but found incompetent to stand trial were committed to state hospitals until they became 'sane' (i.e., competent). Because attainment of competence was the sole standard for release the commitments were indefinite, even permanent, so long as incompetence persisted." (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 167 (*Hofferber*).)

In 1972, however, the United States Supreme Court held that "indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial" offends constitutional guarantees of equal protection and due process. (*Jackson v. Indiana, supra,* 406 U.S. at p. 731.) The court explained, "[A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." (*Id.* at p. 738.) "If it is determined that this is not the case" — that is, the defendant is not likely to soon regain competency — "then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant." (*Ibid.*)

The following year, our court "adopt[ed] the rule of the *Jackson* [*v. Indiana*] case." (*Davis, supra*, 8 Cal.3d at p. 801.) We further accepted that "the duration of commitments to state hospitals must bear some reasonable relation to the purpose which originally justified the commitment" (*id.* at p. 805), which is to "provide observation, care and treatment of [the committed individuals'] mental condition, with a view toward restoring their capacity to stand trial" (*id.* at pp. 805–806). Accordingly, we instructed trial courts to direct hospital authorities to examine the persons committed and periodically report to the courts on their progress toward recovery of competency. We delegated to trial courts the discretion to "decid[e] whether, in a particular case, sufficient progress is being made to justify continued commitment pending trial" but imposed no specific time limits on how long a person may be held in "continued commitment." (*Id.* at p. 807.) Consistent with *Jackson v. Indiana*, however, we specified that if "there exists no reasonable likelihood that the person will recover his competence to stand trial in the foreseeable future, then the court should either order him released from confinement or initiate appropriate alternative commitment proceedings under the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.)," California's civil commitment scheme. (*Ibid.*)

### 2. *1974 to the Present*

In response to *Davis*, the Legislature enacted Assembly Bill No. 1529 (1973–1974 Reg. Sess.) in 1974. (Stats. 1974, ch. 1511.) Sponsored by Assemblyman Frank Murphy, the bill was designed to "bring California's statutory provisions into accord" with the guidelines in *Davis* and *Jackson v. Indiana*. (Stats. 1974, ch. 1511, § 16, p. 3324; see also Parker, *California's New Scheme For The Commitment Of Individuals Found*

*Incompetent To Stand Trial* (1975) 6 Pacific L.J. 484, 489 (Parker).) The Legislature specified that a defendant found incompetent to stand trial cannot be committed for more than three years. (See Stats. 1974, ch. 1511, § 6, p. 3319.) The Legislature also provided for the return of a defendant to court if "ha[ving] been committed for 18 months" — half of a maximum three-year commitment term — the defendant is still hospitalized as incompetent. (*Ibid.*) Upon returning to court, a hearing is held to determine the defendant's competency. (*Ibid.*)

As part of the same enactment, the Legislature created a new type of conservatorship, referred to as a "Murphy" conservatorship after the sponsor of Assembly Bill No. 1529 (1973–1974 Reg. Sess.) (see, e.g., *Jackson v. Superior Court*, *supra*, 4 Cal.5th at p. 102). This allows for a one-year, renewable commitment of qualifying mentally incompetent defendants who have reached the maximum time for a commitment under section 1370(c)(1). (See Stats. 1974, ch. 1511, §§ 6, 12, pp. 3319, 3322; see also, e.g., *Conservatorship of Eric B.* (2022) 12 Cal.5th 1085, 1096–1097; *Hofferber*, *supra*, 28 Cal.3d at pp. 169–170.) This new civil commitment procedure, together with the imposition of a maximum commitment period and additional periodic reporting requirements, sought to "integrate and resolve the conflicting concerns of protecting society from dangerous individuals who are not subject to criminal prosecution . . . and safeguarding the freedom of incompetent criminal defendants who present no threat to the public." (Parker, *supra*, 6 Pacific L.J. at p. 485; see also, e.g., *People v. Waterman* (1986) 42 Cal.3d 565, 568 (*Waterman*); *Hofferber*, at pp. 176–177.)

The 1974 statutory scheme has been amended numerous times. Particularly relevant for our purposes are amendments

enacted in 1980 and 2018. In 1980, the Legislature amended section 1372 to add procedures following the filing of a certificate of restoration of competency. As added, section 1372, subdivision (a)(2) specified that "[u]pon the filing of a certificate of restoration, the defendant shall be returned to the committing court." (Stats. 1980, ch. 547, § 14, p. 1516.) The Legislature also added subdivisions (c) and (d) to section 1372 at that time. Subdivision (c) requires the court to provide notice of "the date of any hearing on the defendant's competence and whether or not the defendant was found by the court to have recovered competence" when a defendant is returned to court. (Stats. 1980, ch. 547, § 14, p. 1517.) Subdivision (d) specifies the court's responsibilities regarding the defendant's custodial status if it approves the certificate of restoration. (Stats. 1980, ch. 547, § 14, p. 1517.)

In 2018, the Legislature reduced the maximum term of commitment from three years to two years. (Stats. 2018, ch. 1008, § 3.) The author of the bill explained that the legislation was motivated by (1) the need to reduce "[w]ait lists for placements in state-operated treatment facilities," and (2) a reassessment of the maximum period of time reasonably necessary "for restoring a person to competency, or for determining that he or she is not restorable" in response to advancements in "modern medical science." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1187 (2017–2018 Reg. Sess.) as introduced Feb. 15, 2018, p. 4.) As part of the same bill, the Legislature eliminated the requirement that a defendant who remains committed for 18 months be returned to court for a redetermination of competency. (Stats. 2018, ch. 1008, § 3.)

### 3. *Current Law Governing Competency*

As it now stands, the statutory scheme governing competency works as follows:  When a doubt arises in the trial court judge's mind regarding the mental competency of a criminal defendant, the judge may order a hearing to determine the defendant's competency.[2]  (§ 1368, subds. (a), (b).)  All criminal proceedings are suspended once the order issues.  (*Id.*, subd. (c).)  At the competency hearing, the defendant is presumed competent and incompetence must be proved by a preponderance of the evidence.  (§ 1369, subd. (f); see also *Medina v. California* (1992) 505 U.S. 437, 446–449, 452–453.)  If a defendant is found incompetent, criminal proceedings remain "suspended until the person becomes mentally competent," and the court issues a commitment order.  (§ 1370, subd. (a)(1)(B).)  Specifically, "[t]he court shall order that the mentally incompetent defendant be delivered by the sheriff to a State Department of State Hospitals facility, as defined in Section 4100 of the Welfare and Institutions Code, as directed by the State Department of State Hospitals, or to any other available public or private treatment facility, including a community-based residential treatment system approved by the community program director, or their designee, that will promote the

---

[2]  The judge must order such a hearing if defense counsel also declares a doubt regarding a defendant's competency.  (§ 1368, subd. (b).)  Even where counsel believes the defendant is competent, however, the court "may nevertheless order a hearing." (*Ibid.*; see also *People v. Wycoff* (2021) 12 Cal.5th 58, 82 [explaining that our court has construed section 1368 " 'in conformity with the requirements of federal constitutional law' " to mean that "[i]f the court is presented with substantial evidence of mental incompetence . . . the court must declare a doubt about the question and initiate an inquiry"].)

defendant's speedy restoration to mental competence, or placed on outpatient status as specified in Section 1600." (§ 1370, subd. (a)(1)(B)(i).) After the issuance of the commitment order, a defendant who is ordered "delivered . . . to a . . . State Hospitals facility" is to be admitted to a state hospital or a facility under contract with the Department. (*Ibid.*)

Whether admitted to a state hospital facility, delivered to a community-based residential treatment program, or placed on outpatient status, a defendant is returned to court when any of the following occurs: (1) a medical director or comparable personnel certifies to the court that the defendant has been restored to competency;[3] (2) an appointed psychiatrist or psychologist opines that the defendant has regained competency;[4] (3) the court determines that "treatment for the defendant's mental impairment is not being conducted" (§ 1370, subd. (b)(4)); (4) a medical director or comparable personnel reports to the court that there is no substantial likelihood the

---

[3] Section 1372, subdivision (a).

[4] Section 1370, subdivision (a)(1)(G) ("If, at any time after the court has declared a defendant incompetent to stand trial pursuant to this section, counsel for the defendant or a jail medical or mental health staff provider provides the court with substantial evidence that the defendant's psychiatric symptoms have changed to such a degree as to create a doubt in the mind of the judge as to the defendant's current mental incompetence, the court may appoint a psychiatrist or a licensed psychologist to opine as to whether the defendant has regained competence. If, in the opinion of that expert, the defendant has regained competence, the court shall proceed as if a certificate of restoration of competence has been returned pursuant to paragraph (1) of subdivision (a) of Section 1372").

defendant will regain competency in the foreseeable future;[5] or (5) the maximum commitment period set by section 1370(c)(1) has been reached.[6]  For ease of reference, we sometimes use the term "designated medical professional" through the remainder of this opinion to include the medical director of the Department or any relevant designee under the competency statutes.

---

[5]  Section 1370, subdivision (b)(1)(A) (specifying the reporting obligations of medical personnel and stating "[i]f the report [filed by the medical director of the State Department of State Hospitals, the person in charge of a treatment facility, or outpatient treatment staff] indicates that there is no substantial likelihood that the defendant will regain mental competence in the foreseeable future, custody of the defendant shall be transferred without delay to the committing county and shall remain with the county until further order of the court.  The defendant shall be returned to the court for proceedings pursuant to paragraph (2) of subdivision (c) no later than 10 days following receipt of the report.  The court shall not order the defendant returned to the custody of the State Department of State Hospitals under the same commitment").

[6]  Section 1370(c)(1) ("At the end of two years from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged in the information, indictment, or complaint, or the maximum term of imprisonment provided by law for a violation of probation or mandatory supervision, whichever is shorter, but no later than 90 days prior to the expiration of the defendant's term of commitment, a defendant who has not recovered mental competence shall be returned to the committing court, and custody of the defendant shall be transferred without delay to the committing county and shall remain with the county until further order of the court.  The court shall not order the defendant returned to the custody of the State Department of State Hospitals under the same commitment.  The court shall notify the community program director or a designee of the return and of any resulting court orders").

Regarding the first path back to court, under section 1372, if the designated medical professional "determines that the defendant has regained mental competence," that person "shall immediately certify that fact to the court by filing a certificate of restoration." (§ 1372, subd. (a)(1).) Within 10 days of the filing of the certificate of restoration, the defendant "shall be returned to the committing court." (§ 1372, subd. (a)(3)(C).) "When a defendant is returned to court with a certification that competence has been regained," the court shall notify the appropriate personnel "of the date of any hearing on the defendant's competence and whether or not the defendant was found by the court to have recovered competence." (§ 1372, subd. (c)(1).)

Although section 1372 refers to a "hearing on the defendant's competence" (§ 1372, subd. (c)(1)), it does not "set forth any . . . procedures" for such a hearing. (*People v. Rells* (2000) 22 Cal.4th 860, 867 (*Rells*).) We have held, however, that "section 1372 allows its gaps to be filled by Penal Code section 1369," which establishes the procedures for the initial hearing on the issue of a defendant's mental competence. (*Id.* at p. 868.) Thus, when a defendant returns to court after a certificate of restoration has been filed, the defendant is presumed competent and bears the burden of proving otherwise at a hearing. (See *id.* at pp. 867–868.) "If the committing court approves the certificate of restoration" (§ 1372, subd. (d)) — thus finding the defendant has recovered competency — criminal proceedings resume (§ 1370, subd. (a)(1)(A)) and the court "shall hold a hearing to determine whether the person is entitled to be admitted to bail or released on own recognizance status pending conclusion of the proceedings" (§ 1372, subd. (d)). The court may, however, "reject[] a certificate of restoration" based on a

medical evaluation (§ 1372, subd. (c)(2)), at which point a defendant may be returned to a treatment facility if the maximum commitment period has not yet been reached. (See § 1370, subd. (a)(1)(B); *Jackson v. Superior Court*, *supra*, 4 Cal.5th at p. 106.)

Different procedures apply if the maximum commitment term has been reached. As mentioned, section 1370(c)(1) prohibits commitments lasting more than two years. If the defendant has not regained competency, the statute does not provide for a hearing to redetermine a defendant's competency at this point. (Accord, *In re Taitano* (2017) 13 Cal.App.5th 233, 239, 246 (*Taitano*) [holding that trial courts are not authorized to hold competency hearings after the maximum statutory commitment period has expired where the court "had not received a certification that [the defendant] has been restored to competence by certain mental health officials (including the county medical health director) or the conservator"]; *People v. Quiroz* (2016) 244 Cal.App.4th 1371, 1375 (*Quiroz*) [holding that a trial judge has no power "to convene a competency hearing after a state hospital certifies that a defendant, who has been involuntarily confined for three years due to incompetence to stand trial, is not likely to regain competency"].) Instead, section 1370 directs the committing court to "initiate conservatorship proceedings for the defendant" if "it appears to the court that the defendant is gravely disabled." (§ 1370, subd. (c)(3).)

A defendant is gravely disabled if, "as a result of a mental health disorder," the defendant "is unable to provide for his or her basic personal needs for food, clothing, or shelter." (Welf. & Inst. Code, § 5008, subd. (h)(1)(A).) Alternatively, a defendant is gravely disabled — and subject to a Murphy

conservatorship — if the defendant "has been found mentally incompetent" (*id.*, subd. (h)(1)(B)) and certain facts obtain, including that "[t]he person represents a substantial danger of physical harm to others by reason of a mental disease, defect, or disorder" (*id.*, subd. (h)(1)(B)(iv)). If the defendant is deemed gravely disabled under either definition, the defendant may be confined as long as "conservatorship is still required." (Welf. & Inst. Code, § 5361, subd. (b).) On the other hand, "If the defendant is not gravely disabled, the defendant must be released [citation], and the trial court may dismiss the action in the interest of justice pursuant to section 1385 [citations]. Such a dismissal is 'without prejudice to the initiation of any proceedings that may be appropriate' under the [Lanterman-Petris-Short] Act." (*Jackson v. Superior Court, supra*, 4 Cal.5th at p. 102.)

To summarize the steps in the commitment process most relevant to the issue before us: A defendant found mentally incompetent to stand trial shall be committed by court order. (See § 1370.) If the designated medical professional finds that the defendant's competency has been restored, the person files a certificate of restoration, triggering the defendant's return to court. (See §§ 1370, subd. (a)(1)(C), 1372.) Following the defendant's return, the court holds a hearing to determine whether to approve or reject the certificate. (See § 1372.) If a defendant has not regained competency within two years of the date of commitment, the defendant is either released or subject to civil conservatorship proceedings. (See § 1370, subd. (c); *Jackson v. Superior Court, supra*, 4 Cal.5th at p. 102.)

## B. Determining Whether a Commitment Continues Past the Filing of a Certificate of Restoration

Because it involves a pure question of law, we review de novo the Court of Appeal's conclusion that the filing of a certificate of restoration terminates an incompetency commitment. (See, e.g., *Rells, supra*, 22 Cal.4th at p. 870.) In interpreting the competency statutory scheme, " '[O]ur task is to ascertain the intent of the Legislature so as to effectuate the purpose of the enactment. [Citation.] We look first to the words of the statute, which are the most reliable indications of the Legislature's intent. [Citation.] We construe the words of a statute in context, and harmonize the various parts of an enactment by considering the provision at issue in the context of the statutory framework as a whole.' " (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83 (*Kim*).) If " 'the [statutory] language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history.' " (*Ibid.*)

### 1. *The Statutory Text Is More Consistent with Rodriguez's Position than the People's*

"The relevant statutes do not explicitly state the point at which an incompetency commitment ends" when a certificate of restoration has been timely filed. (*Carr, supra*, 59 Cal.App.5th at p. 1144.) That is, section 1370(c)(1) does not expressly specify when a commitment ends for a defendant who has been certified as restored to competence. Likewise, section 1372 — the provision pertaining to certificates of restoration of competence — is silent regarding how the issuance of the certificate affects the running of the two-year maximum period of commitment.

Nonetheless, as we explain below, the crucial competency assessments before and after the filing of the certificate of restoration require *judicial* action and approval. The "legal force and effect" of the "filing of the certificate" is simply to "cause[] the defendant to be returned to court for further proceedings" (*Rells, supra*, 22 Cal.4th at p. 868; see also § 1372, subd. (a)), and even that return occurs pursuant to a court order. (See § 1370, subd. (a)(1)(C); § 1372, subd. (a)(2).) When the court's central role in competency proceedings is juxtaposed against the limited significance of a certificate of restoration, we conclude the Legislature did not intend for the filing of a certificate to "fix[] . . . the end date for calculation of the commitment treatment period under section 1370(c)(1)," as the court below concluded. (*Rodriguez, supra*, 70 Cal.App.5th at p. 652.)

> a. *The statutory text suggests that the two-year clock of section 1370(c)(1) does not stop with the filing of a certificate of restoration*

We begin, "as always, with the text" of the relevant statutes. (*Villanueva v. Fidelity National Title Co.* (2021) 11 Cal.5th 104, 114.)

Section 1370(c)(1) provides that "[a]t the end of two years from the date of commitment . . . but no later than 90 days prior to the expiration of the defendant's term of commitment, a defendant who has not recovered mental competence shall be returned to the committing court." Even when a certificate of restoration of competency has been filed, it is the court's decision whether to accept a certificate that determines whether criminal proceedings may resume, or whether — if the two-year timeframe has not elapsed — further treatment is required instead. A finding that a defendant has recovered mental

competency requires a court order, and the court must act to approve the certificate of restoration even when not contested by the parties. (See § 1372, subds. (c), (d).) Moreover, before the court adjudicates a defendant competent, the defendant cannot seek bail or otherwise challenge the underlying charges because criminal proceedings remain suspended. (See §§ 1372, subd. (d), 1370, subd. (a)(1).) This array of procedures suggests that until the court decides whether to accept a certificate, the two-year clock on an incompetency commitment (§ 1370(c)(1)) has not stopped.

Section 1370(c)(1) also requires the defendant's return to court 90 days before the expiration of the maximum two-year commitment period. The reservation of a 90-day period cannot be wholly explained by the time it should take to transport the defendant. Section 1370 makes clear that the defendant must be transported "without delay" (§ 1370(c)(1)), "immediate[ly]" (*id.*, subd. (c)(2)(A)), and most concretely, "within 10 calendar days" (*id.*, subd. (c)(2)(B)). The statute thus allows time for necessary subsequent judicial proceedings to be completed before reaching the maximum period of commitment.

It is true the Legislature did not appear to have the issue before us specifically in mind when it amended section 1370(c)(1) in 2014, effective January 1, 2015, to include this 90-day period. (See Assem. Com. on Appropriations, Analysis of Assem. Bill No. 2625 (2013–2014 Reg. Sess.) as amended Apr. 24, 2014, p. 1 [indicating that the language was added with the aim "to reduce the backlog of patients awaiting a state hospital placement in county jails by ensuring defendants found incompetent to stand trial (IST) who cannot be restored to trial competency are returned to their original county of commitment in a timely manner"].) Nonetheless, the 90-day window is

20

consistent with Rodriguez's general position that some judicial action is necessary to end a commitment period.

### b. *The People's interpretation of the statutory text is unpersuasive*

The People's arguments do not persuade us that "the plain language of the statutory scheme" requires courts to exclude the period following the filing of a certificate of restoration from the two-year maximum commitment period.

### i. *Section 1372*

First, the People rely heavily on section 1372's provisions regarding the certification of restoration to competence. Yet it is not clear how this section supports the People's interpretation. As previously summarized, section 1372 specifies that "[i]f the medical director of a state hospital [or other appropriate personnel] determines that the defendant has regained mental competence, the director or designee shall immediately certify that fact to the court by filing a certificate of restoration with the court." (§ 1372, subd. (a)(1).) Because the court's initial commitment order must have directed the sheriff to "redeliver the patient to the court . . . upon receiving from the state hospital or treatment facility a copy of the certificate of restoration" (*id.*, subd. (a)(2)), "the patient shall be returned to the committing court no later than 10 days following the filing of a certificate of restoration" (*id.*, subd. (a)(3)(C)). Upon a defendant's return to court, all further proceedings occur at the court's discretion. (See § 1372, subds. (c)–(e).) In short, section 1372 specifies what the filing of a certificate of restoration accomplishes: It causes the sheriff to "redeliver the patient to the court" pursuant to the court order. (§ 1372, subd. (a)(2).) Section 1372 contains no hint that the time

between the filing of a certificate of restoration and a court's ruling on the certificate is excluded from the commitment period.

The People maintain that "[n]othing in the plain language of the statutory scheme suggests that the discretionary hearing contemplated by section 1372 falls within the commitment time enumerated in section 1370, subd. (c)(1)." The Court of Appeal reached the same conclusion. (See *Rodriguez, supra,* 70 Cal.App.5th at p. 650 ["Section 1372 does not explicitly state any timeframe within which the restoration hearing must be held and does not reference section 1370(c)(1)'s two-year maximum for an incompetency commitment"].)

As we have recognized, however, section 1372 "does not set forth any . . . procedures whatsoever" to govern the hearing on a defendant's recovery of mental competency. (*Rells, supra,* 22 Cal.4th at p. 867; see also *People v. Murrell* (1987) 196 Cal.App.3d 822, 826 [observing that "section 1372 does not directly provide for a hearing where the defendant may challenge the medical director's certification of competence" and the legislative intent to provide for such a hearing must be inferred].) Thus, the fact that section 1372 does not mention section 1370(c)(1)'s two-year limit is neither surprising nor illuminating.[7]

---

[7]    We also note that section 1370, subdivision (a)(3)(C)(ii) specifies that "[i]f a certificate of restoration of competency was filed with the court pursuant to Section 1372 and the court subsequently rejected the certification," the court shall provide "a new computation or statement setting forth the amount of credit for time served, if any, to be deducted from the defendant's maximum term of commitment *based on the court's*

### ii. *The statutory presumption of competence*

Second, the People rely upon the presumption of competence (see § 1369, subd. (f)), which applies at a section 1372 hearing at which a judge determines whether to approve or reject a certificate of restoration. (See *Rells*, *supra*, 22 Cal.4th at p. 862.) The court below likewise relied on this presumption, reasoning that the absence of further treatment together with the presumption of competence meant that a defendant could no longer be regarded as subject to a commitment after the certificate's filing. (*Rodriguez*, *supra*, 70 Cal.App.5th at pp. 653, 655–656.) But there is reason to question this analysis.[8]

The presumption of competence applies at every trial and retrial of a defendant's competency, even where there is reason to doubt a defendant is competent. As we have previously noted, "[t]he presumption that the defendant is mentally competent . . .

_____

*rejection of the certification.*" (§ 1370, subd. (a)(3)(C)(ii), italics added.) This language appears to contemplate that when "a certificate of restoration of competency was filed with the court pursuant to Section 1372 and the court subsequently rejected the certification," the period in between the filing of the certificate and the court's rejection thereof is relevant for purposes of computing the maximum period of commitment allowed by section 1370(c)(1). (§ 1370, subd. (a)(3)(C)(ii).)

[8] The Court of Appeal relied on *Rells* in concluding that "the filing of the certificate triggers a presumption of mental competency under section 1372." (*Rodriguez*, *supra*, 70 Cal.App.5th at p. 652.) But *Rells* merely stated that the filing of the certificate of restoration "trigger[s] a *hearing* on a defendant's recovery of mental competence." (*Rells, supra*, 22 Cal.4th at p. 868, italics added.) At this hearing, as explained *post*, the presumption of competence operates as a principle of law as in *any* competency proceeding. It is a misreading of *Rells* to conclude that a restoration certificate itself creates the presumption of competence.

is applicable at a trial of the defendant's mental competence" when a court first declares doubt as to the mental competence of the defendant. (*Rells, supra,* 22 Cal.4th at p. 867.) The presumption therefore applies "*in spite of the fact that it may run counter to any doubt expressed by the court and supported by the opinion of* [*the defendant's*] *own counsel.*" (*Ibid.*) When the statute provided for a defendant's return to court if the defendant was still incompetent after an 18-month commitment (see Stats. 1974, ch. 1511, § 6, p. 3319; former § 1370, subd. (b)(2)), the presumption of competence was likewise applicable at the retrial of the defendant's competence "*in spite of the fact that it is inconsistent with his apparent* non*recovery of mental competence.*" (*Rells,* at p. 867.)

In light of the foregoing, it appears that the Legislature simply intended for the presumption of competence to operate as a principle of law that a court applies in making a competency determination at any stage. (See *Rells, supra,* 22 Cal.4th at p. 862 [stating that the presumption of competence "operates to impose the burden of proof on the party, if any, who claims that the defendant is mentally incompetent, and fixes the weight thereof at preponderance of the evidence"]; *Medina v. California, supra,* 505 U.S. at p. 449 [explaining that the presumption of competence has limited legal effect, "affect[ing] competency determinations only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent"].) It goes too far to conclude that the presumption reflects the Legislature's understanding that a commitment ends upon the filing of a certificate of restoration.

Furthermore, even when the presumption of competence does not run counter to doubts regarding the defendant's

competency — and instead "conforms in fact with the certificate of restoration filed by the specified mental health official" (*Rells, supra,* 22 Cal.4th at p. 867, italics omitted) — the court has the statutory authority to reject the certification and find a defendant incompetent (see § 1372, subd. (c)(2)).[9] Yet, under the People's interpretation, even an *erroneous* certificate of restoration terminates an incompetency commitment. The People offer no persuasive explanation why the Legislature would intend that an incompetent defendant — who like Rodriguez may be moved between a state hospital and the county jail, all the while remaining confined and involuntarily medicated — should not have such time counted toward the maximum term of commitment merely because his doctor mistakenly concluded that he has regained competency.

iii. *The asserted primacy of location*

The People's third textual argument is based on section 1370. The People assert that section 1370 uses the words "delivered" and "committed" synonymously in arguing that a commitment consists only of that period "wherein the defendant is physically placed in the care and custody of the state hospital for restoration treatment." (See § 1370, subd. (a)(1)(B)(i) [specifying that once a defendant is found incompetent, "[t]he

---

[9] This contrasts with previous versions of the law, in which a designated medical professional's certification that a defendant has recovered mental competency served to render a person competent as a matter of law. (See Stats. 1974, ch. 1511, § 7, p. 3320; *People v. Ashley* (1963) 59 Cal.2d 339, 359 (*Ashley*) [after a superintendent of a state hospital certifies that a defendant has regained competence, "[t]he defendant is then to be tried"]; *In re Phyle* (1947) 30 Cal.2d 838, 843–844 (*Phyle*); *People v. Superior Court* (*Contra Costa County*) (1935) 4 Cal.2d 136, 145 (*Contra Costa County*).)

court shall order that the mentally incompetent defendant be delivered by the sheriff to a State Department of State Hospitals facility . . . or to any other available public or private treatment facility . . . or placed on outpatient status"]; *id.*, subd. (a)(2) [referring to the order made under subdivision (a)(1)(B)(i) as "the order directing that the defendant be committed to the State Department of State Hospitals or other treatment facility or placed on outpatient status"].) Because a defendant is "committed" only upon being "delivered" to a treatment facility, the People maintain, "the definition of the 'commitment' . . . should not be conflated with the period of court-adjudged incompetency." Instead, according to the People, this language signifies that it is a defendant's presence at a treatment facility that constitutes a commitment. And because a defendant is transferred back to county custody after being certified as having been restored to competency, the People contend, the defendant is no longer committed for purposes of calculating the two-year time limit.

There are significant problems with the People's argument that commitment only occurs when the defendant is physically present at a treatment facility. First, if location is determinative of whether a defendant is committed, then a commitment should end with a defendant's actual transport from the treatment facility back to county custody — not with the filing of a certificate of restoration, as the People claim. Section 1372 makes clear that such transport may take as long as 10 days from the filing of the certificate. (§ 1372, subd. (a)(3)(C) ["In all cases, the patient shall be returned to the committing court no later than 10 days following the filing of a certificate of restoration"].) The People's position that a commitment ends with the filing of a certificate of restoration is

therefore inconsistent with their own assertion that a commitment consists of the period when a defendant is physically in a treatment facility.[10]

Second, the People's position is inconsistent with various statutory provisions relating to competency determinations and proceedings that treat "commitment" as distinct from events such as "admission," "transfer," or "confinement." For example, Welfare and Institutions Code section 4335.2 "establish[es] a program for the [D]epartment to perform reevaluations primarily through telehealth evaluations for felony incompetent to stand trial (IST) individuals in jail who have been waiting for admission to the [D]epartment." (Welf. & Inst. Code, § 4335.2, subd. (b).) Among the stated goals of allowing for such telehealth evaluations is "[t]o permit the [D]epartment to conduct reevaluations of IST defendants *committed to the [D]epartment* and *awaiting admission to [D]epartment facilities*." (*Id*., subd. (b)(1), italics added; see also *id*., subd. (c)

---

[10]   In this case, the dates of the trial court's orders of commitment are not the dates of Rodriguez's transport to a state hospital or the dates of his admission to such a facility — i.e., they are not when Rodriguez was "physically placed in the care and custody of the state hospital for restoration treatment." The record does not reflect when Rodriguez was transported to or from a state hospital for either of his two commitments (see *Rodriguez, supra,* 70 Cal.App.5th at pp. 636–638), making it impossible to evaluate how long Rodriguez has been committed under the People's reading of the statutes. This gap in the record may be explained by the fact that the parties below agreed that the dates of the transports were not legally significant. Before the Court of Appeal, the People "apparently concede[d] that Rodriguez's 'commitment' under section 1370(c)(1) began on the date of the trial court's order of commitment." (*Id*. at p. 650, fn. 14.)

["The [D]epartment, or its designee, have the authority and sole discretion to consider and conduct reevaluations for IST defendants *committed to and awaiting admission* to the [D]epartment"], italics added.) This provision suggests that a defendant is deemed committed upon having his or her place of treatment judicially determined, not when the defendant actually enters a treatment facility.

Along the same lines, section 1370 requires the Department to "make a written report to the court . . . concerning the defendant's progress toward recovery of mental competence" "[w]ithin 90 days after a commitment made pursuant to subdivision (a)." (§ 1370, subd. (b)(1).) "Commitment," as used in this provision — i.e., "a commitment made pursuant to subdivision (a)" — refers to the court's commitment order, and not admission to or physical placement in a state hospital. (*Ibid.*) Similarly, other subdivisions of section 1370 refer to "commit[ment]" and "confine[ment]" or "commit[ment]" and "transfer" to a facility as separate events. (See, e.g., § 1370, subd. (a)(5) ["When directing that the defendant be confined in a State Department of State Hospitals facility pursuant to this subdivision, the court shall commit the defendant to the State Department of State Hospitals"]; *id.*, subd. (a)(6)(A) [specifying appropriate actions a court may take in the event "the defendant is committed or transferred to the State Department of State Hospitals pursuant to this section"].) A commitment thus does not necessarily coincide with actual presence in a state treatment facility.[11]

---

[11] We need not decide in this case whether defendants placed on outpatient status (see § 1370, subd. (a)(1)(B)(i), (2)(A)(ii)) are,

#### iv. *Other textual arguments*

The People also rely on section 1370(c)(1), which specifies that "a defendant who has not recovered mental competence shall be returned to the committing court" at the end of a two-year commitment period.  The People argue that the two-year time limit in section 1370(c)(1) cannot "apply to court hearings after the defendant has been returned to court pursuant to section 1372, given that the remedy [under section 1370(c)(1)] is to return the defendant to the committing court — an event that has already occurred."

The People's interpretation fails to recognize section 1370(c)(1)'s multiple functions.  This statute not only compels the transport of a defendant from one place to another, but also limits the amount of time that a defendant may be committed due to incompetency.  (See § 1370(c)(1) [specifying that "[t]he court shall not order the defendant returned to the custody of the State Department of State Hospitals under the same commitment" if a defendant has reached his maximum term of commitment].)  Rodriguez seeks the application of this limit and a declaration that as a defendant whose commitment has reached the statutorily allowed maximum, "the court should either order him released from confinement or initiate appropriate alternative commitment proceedings under the Lanterman-Petris-Short Act" (*Davis, supra,* 8 Cal.3d at

---

in fact, committed for purposes of the two-year limit.  Under the People's reading of the statutes, however, defendants who are on outpatient status are *never* committed because they are never physically in the custody of a treatment facility.  It is unclear what meaning, if any, section 1370(c)(1)'s two-year limit would have under the People's reading.

p. 807) — neither of which is "an event that has already occurred."[12]

The People also contend that if we were to "conclud[e] that a court's competency finding is necessary to terminate [a] commitment," commitments would last "indefinitely" for certain defendants. Specifically, the People point to defendants returned to court when a designated medical professional reports that "there is no substantial likelihood that the defendant[s] will regain mental competence in the foreseeable future" (§ 1370, subd. (b)(1)(A)) and those returned to court after

_____

[12] The People's argument also ignores the possibility that an incompetent defendant may be treated at the county jail. Welfare and Institutions Code section 4100 enumerates the types of facilities over which the Department has jurisdiction. Among these are "county jail treatment facilit[ies] under contract with the State Department of State Hospitals to provide competency restoration services." (Welf. & Inst. Code, § 4100, subd. (g).) A defendant committed to a Department facility could be at the county jail treatment facility for the entire commitment period.

Section 1370(c)(1) therefore requires that defendants treated at the county jails "be returned to the committing court" and their "custody . . . be transferred without delay to the committing county" at the end of their maximum terms of commitment and "shall remain with the county until further order of the court." (*Ibid*.) This means that section 1370(c)(1) requires defendants already in county custody be returned to county custody until the court takes action regarding their commitment status. (*Ibid*.) Yet, the People do not argue that section 1370(c)(1) is inapplicable to defendants receiving treatment at a county jail facility despite their county custody constituting "an event that has already occurred." For such defendants, like those in Rodriguez's situation, section 1370(c)(1) is applicable regardless of the defendant's physical location.

their maximum commitment term has expired (§ 1370(c)(1)). The People maintain that because the statutes do not provide for a court hearing to redetermine defendants' competency when they are returned via these two paths, such hearings would never occur and the defendants "would remain indefinitely committed." (See *Taitano*, *supra*, 13 Cal.App.5th at p. 239; *Quiroz*, *supra*, 244 Cal.App.4th at p. 1374.) But we are addressing only the limited issue of whether the interval between the filing of a certificate of restoration and the court's ruling on it is excluded from the maximum commitment time set by section 1370(c)(1). Our holding does not mean that defendants returned without such certificates will be committed "indefinitely."

Finally, in their amicus curiae brief submitted in support of the People, the State Department of State Hospitals and the State Department of Developmental Services make an argument that relies on the timing of when a commitment begins. According to amici curiae, "[i]t is undisputed that the maximum commitment period does not include the time before a court conducts an initial competency hearing," i.e., a hearing under section 1370. According to amici curiae, "[t]he time between the filing of a certificate of restoration and a section 1372 hearing should be treated the same way" and excluded from the maximum competency period.

But a defendant awaiting a competency hearing under section 1370 differs in important ways from a defendant awaiting a competency determination under section 1372. Before a court conducts an initial competency hearing under section 1370, the defendant has not been legally adjudicated as incompetent. In contrast, a defendant who has been certified by medical personnel as restored to competency necessarily has

been previously determined to be incompetent, and until a court makes a competency finding pursuant to section 1372, the defendant cannot be treated as legally competent. In addition, a defendant who has not been adjudicated as incompetent may still be released on bail. (See § 1371.) A defendant who has been certified as competent, on the other hand, is ineligible for bail consideration until the court determines the defendant has regained competency. (See § 1372, subd. (d).)

In short, the period prior to a competency hearing under section 1370 occurs before the period of commitment and thus tells us very little about the period of commitment itself. The fact that "the time before a court conducts an initial competency hearing" under section 1370 is not counted toward the term of commitment does not persuade us to likewise exclude from a maximum period of commitment the interval before a court conducts a competency hearing under section 1372.

### 2. *Rodriguez's Interpretation Furthers the Purposes of the Statute*

The statutory text read in context is consistent with the understanding that the filing of a certificate of restoration does not stop the two-year clock set by section 1370(c)(1). But because the language of these statutes " 'supports more than one reasonable construction,' " we look for an interpretation of the statute that will best " 'effectuate the purpose' " of the competency statutory scheme. (*Kim, supra*, 9 Cal.5th at p. 83.) We conclude Rodriguez's proposed interpretation furthers the purpose of the relevant competency statutes.

We have explained that "[t]he incompetence program . . . is a special form of pretrial detention" whose "purpose is restoration of a specific mental state without which the criminal

process cannot proceed." (*Waterman, supra*, 42 Cal.3d at p. 569, italics omitted.) In adopting the "incompetence program" in 1974, the Legislature clearly intended to limit a defendant's time in "pretrial detention" and to suspend "the criminal process" so that the defendant can be restored to "a specific mental state." (*Ibid.*, italics omitted; see Stats. 1974, ch. 1511, § 16, pp. 3323–3324.) The Legislature also intended to "eliminate uncertainty among all persons concerned regarding court procedures." (Stats. 1974, ch. 1511, § 16, p. 3324.) This latter goal of providing certainty is evident in the Legislature's decision to limit the maximum term of commitment to three years (and later two), rather than the "reasonable period of time" mandated under *Davis* and *Jackson v. Indiana.* (*Davis, supra*, 8 Cal.3d at p. 801; *Jackson v. Indiana, supra*, 406 U.S. at p. 738.) As we explained in *Jackson v. Superior Court*, "the Legislature established the [then] three-year maximum in section 1370(c) to protect defendants' due process and equal protection rights not to be committed solely because of incompetence for longer than is reasonable." (*Jackson v. Superior Court, supra*, 4 Cal.5th at p. 105.)

Rodriguez's proposed interpretation — specifically, not excluding the period between the filing of a certificate of competence, and the court's ruling on the certificate — is consistent with the Legislature's intent to limit the period of detention due to incompetency and provide certainty regarding the length of that detention period. Under this interpretation, incompetent defendants are assured that they cannot be confined simply on account of their inability to proceed to trial for more than a specified two-year period.

By contrast, the People's proposed interpretation runs counter to the legislative goal of limiting a defendant's

confinement "solely because of incompetence." (*Jackson v. Superior Court, supra*, 4 Cal.5th at p. 105.) If we were to adopt the People's interpretation, a defendant could be held indefinitely while awaiting a competency hearing, subject only to the limits imposed by the due process clause. As explained previously, after the filing of a certificate of restoration but before the court adjudicates the defendant competent, the defendant cannot seek bail or otherwise challenge the underlying charges because the criminal proceedings remain suspended. (See §§ 1372, subd. (d), 1370, subd. (a)(1).) Allowing defendants to remain in this state of limbo is contrary to the entire statutory scheme.

The People's construction would also eliminate any urgency in reaching a determination of competency. This again runs counter to the Legislature's intent, in imposing the two-year limit under section 1370(c)(1), to eliminate the uncertainty inherent in the "reasonable period of time" standard under *Davis* and *Jackson v. Indiana* and ensure that individuals who may never regain competence are not indefinitely detained with the criminal process suspended.

Furthermore, the fact that a defendant may continue to receive treatment even post-certification means that some of the period following the filing of the certificate is reasonably seen as a part of the process of treatment to determine whether competence can be, and ultimately is, regained — which is what the statute generally aims to expedite. (See Stats. 1974, ch. 1511, § 16, pp. 3323–3324; see also, e.g., *Davis, supra*, 8 Cal.3d at p. 801; *Jackson v. Superior Court, supra*, 4 Cal.5th at p. 105.) Including this period within the limit of section 1370(c)(1) furthers the legislative intent underlying the competency statutes for this reason as well.

### 3. *The Statutory Background Cuts Against the People's Position*

Our interpretation of the relevant statutes is bolstered by the evolution of the competency scheme, which since 1974 has progressively moved control of incompetent defendants away from designated medical professionals at facilities providing competency restoration services, and toward supervision by the courts.

### a. *The evolution of the competency statutory scheme*

In ending the indefinite commitment of mentally incompetent defendants in 1974, the Legislature imposed on the Department (and other facilities) the obligation to provide periodic reports to the court. Specifically, the Legislature mandated that "[w]ithin 90 days of a commitment . . . , the superintendent of the state hospital or other facility to which the defendant is committed shall make a written report to the court concerning the defendant's progress toward recovery of his mental competence." (Stats. 1974, ch. 1511, § 6, pp. 3318–3319.) Only if "the report discloses a substantial likelihood the defendant will regain his mental competence in the foreseeable future" will the defendant "remain in the state hospital or other facility." (*Id.* at p. 3319.) After the initial report, "at six-month intervals or until the defendant becomes mentally competent, the superintendent of the hospital or person in charge of the facility shall report to the court regarding the defendant's progress." (*Ibid.*) Should a report at any point indicate that "there is no substantial likelihood that the defendant will regain

his mental competence in the foreseeable future, the committing court shall order him to be returned to the court."[13]  (*Ibid.*)

In 1980, the Legislature extended the courts' role in overseeing competency procedures by making them responsible for determining whether a defendant has regained competency when the defendant is returned to court following the filing of a certificate of restoration.  (See Stats. 1980, ch. 547, § 14, p. 1517.)  Before this amendment, once the designated medical professional certified a defendant as restored to competency, "[t]he defendant [was] then to be tried."  (*Ashley, supra,* 59 Cal.2d at p. 359; see also Stats. 1974, ch. 1511, § 6, p. 3319.)

---

[13]  These reporting requirements have remained substantially unchanged since 1974, although the statutory language has been amended to take into account placement options not previously available.  (See § 1370, subd. (b).)

Relying on passages from various Court of Appeal decisions, the People argue that "[t]he evil remedied by *In re Davis* and later addressed by the Legislature in enacting section 1370, subd. (c)(1) [in 1974], was the languishing of incompetent defendants *in treatment facilities*, not delays in judicial determinations of competency or other court business when defendants are within the court's direct control."  *Davis* makes clear, however, that we were also concerned with the lack of court supervision over defendants "confined in state hospitals." (*Davis, supra,* 8 Cal.3d at p. 806.)  It was with an eye toward imposing more judicial oversight that we directed "the hospitals' authorities [to] report [to the superior courts] . . . regarding the . . . progress toward competence" of "all persons . . . committed as incompetent to stand trial."  (*Ibid.*)  These reporting requirements, designed to help courts determine whether progress was made in restoring competency, were then enacted into law when the Legislature overhauled the competency statutory scheme in 1974.  In other words, our court in *Davis* and the Legislature in 1974 both sought to put incompetent defendants more "within the court's direct control."

That is, "the final determination" of a defendant's restoration of competency rested with the designated medical professional. (*Phyle*, *supra*, 30 Cal.2d at p. 849.) The Legislature took away the power to make this "final determination" when it required a court to approve or reject a certificate of restoration. (*Ibid*.) Now, a court may accept a certificate of restoration, finding the defendant competent and allowing criminal proceedings to resume. (See §§ 1372, subd. (c), 1370, subd. (a)(1).) Or, a court may reject a certificate of restoration, finding that the defendant remains incompetent. (See § 1372, subd. (c)(2).) In other words, the court may disagree with the designated medical professional, and it is the court's judgment that carries legal significance.[14]

---

[14] The courts in *Carr* and *Rodriguez* touched on this point as it relates to the question before us. The *Carr* court reasoned that "if the commitment terminates when a health official files a certification of competence, [no] plausible purpose [would be] served in requiring [a] court to approve the certification as expressly contemplated in section 1372, subdivision (d)." (*Carr*, *supra*, 59 Cal.App.5th at p. 1145.) The court below responded to *Carr* by positing that "[t]he issuance of the restoration certificate and the subsequent court hearing have distinct statutory objectives." (*Rodriguez*, *supra*, 70 Cal.App.5th at p. 652.) According to *Rodriguez*, "[t]he certificate of restoration to competence by the designated health official and prompt return to the trial court vindicates the defendant's right not to remain longer than two years in the treatment facility," whereas "[t]he judicial determination of restoration of competency ensures that the defendant is not tried if incompetent." (*Id*. at p. 655.) The fact remains, however, that the designated medical professional and the court are making the same determination — whether the defendant is competent — and the court's decision controls.

In addition, courts are empowered to remove defendants from their commitment placement without input from the designated medical professional. In the 1974 enactment, the Legislature declared that a defendant "shall be returned to the committing court" if the court determines that "treatment for the defendant's mental impairment is [not] being conducted." (Stats. 1974, ch. 1511, § 6, p. 3319; see also § 1370, subd. (b)(4).) In 2018, the Legislature specified that "[i]f, at any time after the court has declared a defendant incompetent to stand trial," the court receives "substantial evidence . . . as to create a doubt in the mind of the judge as to the defendant's current mental incompetence," the court may appoint an expert to examine the defendant. (§ 1370, subd. (a)(1)(G), added by Stats. 2018, ch. 34, § 25.) If the expert opines that the defendant has regained competency, "the court shall proceed as if a certificate of restoration of competence has been returned," although no such certificate has been filed by the designated medical professional. (*Ibid*.)[15] Neither of these procedures requires the state hospital's involvement.

---

[15] Likewise, "the court shall proceed as if a certificate of restoration of competence has been returned" if the Department elects to conduct a telehealth reevaluation of a defendant adjudicated mentally incompetent when the defendant is still in county custody and "in the opinion of the department's expert, the defendant has regained competence." (§ 1370, subd. (a)(1)(H)(ii).) If the filing of a certificate ends a commitment as the People argue, it follows that an opinion of restored competency rendered under section 1370, subdivision (a)(1)(G) and (a)(1)(H) should also automatically end a commitment. It seems unlikely the Legislature would have intended for multiple events, potentially happening on different dates, to mark the end of a commitment, as that would sow conflict and confusion.

To summarize:  Through a series of enactments concerning competency proceedings, the Legislature has vested courts with responsibility for overseeing the progress of defendants committed for the purpose of restoring their competency.  Much of this responsibility previously rested with the Department and related entities.  The Legislature, however, has shifted this authority to the courts to ensure that "a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future."  (*Jackson v. Indiana*, *supra*, 406 U.S. at p. 738.)  This sequence of amendments cuts against the People's argument and suggests that the Legislature did not intend a certificate of restoration filed by a designated medical professional to unilaterally stop the two-year clock.

b.  *The People's reliance on the 2018 amendment*

As mentioned, in 2018, the Legislature shortened the maximum commitment term from three years to two years.  (Stats. 2018, ch. 1008, § 3.)  The People point to a summary provided by the Legislative Counsel, which stated that the 2018 bill "would reduce the term for commitment to a treatment facility when a felony [is] committed to the shorter of 2 years or the period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged."  (Legis. Counsel's Dig., Sen. Bill No. 1187 (2017–2018 Reg. Sess.).)  Relying on the phrase "to a treatment facility" within this summary, the People argue that the Legislature did not intend "the maximum commitment to include court hearings that occur when the defendant is no longer receiving restoration

treatment and is no longer in the care and custody of the state hospital."

To the extent the People are focused on a defendant being in a "treatment facility" or in the "custody of the state hospital," the People are again arguing that physical presence in a facility is determinative of commitment. The legislative history of the 2018 amendment does not support this claim. For example, the Senate Committee on Public Safety's analysis of the measure simply stated, "The bill changes the maximum commitment term for a felony from three years to two years." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1187, *supra*, as introduced Feb. 15, 2018, p. 5.) The analysis thus repeated the Legislative Counsel's Digest statement regarding the reduction in the maximum term, but omitted the phrase "to a treatment facility." (Legis. Counsel's Dig., Sen. Bill No. 1187, *supra*.) Similarly, another analysis explained that the bill "reduces the maximum term of commitment to a treatment facility to restore a defendant's competency from three years to two years." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1187 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 1.) Yet the same analysis also stated that the bill "[r]educes the maximum term of commitment for purposes of restoring a defendant's mental competency from three years to two years," again without mentioning treatment facilities. (*Id.* at p. 3.) The varying language found in the legislative materials does not establish that the legislators understood that only time at treatment facilities would be impacted by the bill. The Legislature instead could have referred to time spent in a facility as a shorthand for the entire time of commitment, without intending to exclude other time intervals from counting toward the maximum commitment period.

c. *The People's argument that treatment is determinative*

Based largely on their reading of the legislative history, the People argue that the provision and termination of treatment for incompetency marks the beginning and end of an incompetency commitment.[16]

Underlying the People's equation of treatment with commitment are the assumptions that (1) incompetent defendants always receive treatment while committed to facilities like a state hospital, and (2) incompetent defendants never receive treatment when they leave the facilities. Both assumptions are unsupported.

First, the statutory scheme allows for the possibility that even after a judge or jury finds a defendant incompetent to stand trial and the court orders the defendant committed to the Department, the Department can certify the defendant as restored to competency — without providing any treatment. Under Welfare and Institutions Code section 4335.2, the Department has the "authority and sole discretion to consider and conduct reevaluations for IST defendants committed to and awaiting admission to the department." (Welf. & Inst. Code, § 4335.2, subd. (c).) Such reevaluations are done "primarily through telehealth evaluations." (*Id.*, subd. (b).) If "the

_____

[16] As various amicus curiae point out, the People's position would mean that commitment does not encompass "the period of time while an individual is awaiting treatment even where the current average wait time for placement in a state hospital competency restoration program" is significant. As discussed *ante*, such an interpretation runs counter to the legislative intent to limit the period of detention due to incompetency and provide certainty regarding the length of the detention period.

department clinician or contracted clinician" (see *id.*, subd. (d)) conducting the evaluation concludes that the defendant has regained competency (*id.*, subd. (d)(1)), the clinician's opinion obligates the court to "proceed as if a certificate of restoration of competence has been returned" (Pen. Code, § 1370, subd. (a)(1)(H)(ii)). In other words, defendants may be returned to court as if they have been certified as restored to competency without any restoration treatment being extended. (See also *Medina v. Superior Court* (2021) 65 Cal.App.5th 1197, 1225 (*Medina*) ["it was not necessary for Medina to have first been provided care and treatment for a certificate of restoration to be filed"]; *Carr v. Superior Court* (2017) 11 Cal.App.5th 264, 272 [similar]; *Contra Costa County*, *supra*, 4 Cal.2d at p. 146 ["The medical superintendent of the Stockton state hospital [informed the court] that he believed from the first that the defendant was simulating insanity" and so requested that the defendant be returned to court].)

Second, also contrary to the People's assertion, treatment may continue even after a defendant has been certified as restored to competency. Section 1370, subdivision (a)(2)(B)(iii), permits continued "involuntary administration of antipsychotic medication to the defendant . . . when the defendant returns to county custody" after a certificate of restoration has been filed. This is precisely what happened in this case. When Rodriguez was certified as competent, the medical director of the state hospital informed the court that Rodriguez was "being returned to court on psychotropic medication." The director stressed that Rodriguez needed to "remain on this medication . . . to enable him to be certified" as competent. The record therefore demonstrates it was contemplated that Rodriguez's treatment would continue even after he left the state hospital.

There are also practical problems with the People's approach. It would be difficult to calculate exactly how long a defendant has been committed if the provision of treatment determined the length of a commitment. The provision of treatment does not necessarily coincide with where the defendant is located (e.g., in or outside a treatment facility) or what part of the competency proceedings the defendant is in (e.g., after a commitment order issues but before transport, or after a certificate is filed but before transport). Given these circumstances, it is unlikely that the Legislature intended for the provision or cessation of treatment to delineate whether the two-year clock set by section 1370(c)(1) is running.

### 4. *The Decisions Cited by the People Do Not Support Their Interpretation of the Statutory Text*

We are unconvinced that the decisions cited by the People support their position that only time spent at a treatment facility counts as part of a commitment period.

The court in *Medina* stated in dicta that "[i]n the usual case, only days actually spent in commitment at a mental institution or treatment facility are applied to the maximum commitment period." (*Medina, supra*, 65 Cal.App.5th at p. 1203.) The statement, however, was made without any support or elaboration, and the court emphasized it found the case before it "unusual." (*Ibid.*) Specifically, the defendant in *Medina* had not received required treatment due to what the Court of Appeal characterized as a "standoff" between the trial court that issued a commitment order and the authorities responsible for providing treatment, who refused to accept him. (*Id.* at p. 1201.) The Court of Appeal resolved this impasse, and the defendant's resulting claim of a due process violation, by including "all days since the date of the commitment order in

43

which [the defendant] has been in jail, prison, or treatment" (*id.* at p. 1203; see *id.* at p. 1230) as part of the commitment period. The *Medina* court was not asked to decide whether a certificate of restoration or a court's subsequent order finding the defendant restored to competency marks the end of a commitment period, because no certificate of restoration was ever filed in that case. (*Id.* at p. 1229.) Furthermore, that court's assessment of the "usual" calculations regarding the time of commitment (*id.* at p. 1203) was inconsequential in light of the remedy the court ultimately adopted.

Similarly distinguishable are *People v. G.H.* (2014) 230 Cal.App.4th 1548 (*G.H.*) and *People v. Reynolds* (2011) 196 Cal.App.4th 801 (*Reynolds*). Those courts held a defendant's precommitment custody credits did not apply when calculating the then-applicable three-year maximum statutory limit for a commitment. (See *G.H.*, at p. 1553; *Reynolds*, at pp. 803–804, 808–809.)[17] The People and the Court of Appeal

---

[17]    In doing so, *G.H.* and *Reynolds* distinguished *In re Banks* (1979) 88 Cal.App.3d 864. *Banks* held equal protection and due process principles mandated application of precommitment custody credits when the maximum commitment period is measured by the *maximum term of imprisonment for the most serious offense charged* because "the denial of credit[s] necessarily results in longer confinement for indigents unable to post bail bonds. This discriminatory treatment is constitutionally forbidden." (*Id.* at p. 869, fn. omitted.) However, when the maximum commitment period is set to the statutory maximum limit, *G.H.* and *Reynolds* held that there are no potential equal protection or due process violations and the statute controls because similarly situated defendants are not deprived of the benefit of the precommitment jail time if convicted. (See *G.H.*, *supra*, 230 Cal.App.4th at pp. 1557–1558; *Reynolds*, *supra*, 196 Cal.App.4th at pp. 808–809.)

relied on *G.H.* and *Reynolds* in support of the notion "that a defendant's days in custody in which he or she is not being treated for restoration to competence do not count toward the maximum commitment period." (*Rodriguez, supra,* 70 Cal.App.5th at p. 654.) But here again, *G.H.* and *Reynolds* were focused on an issue different from the one before us. The analysis in *G.H.* and *Reynolds* centered on how to treat a defendant's time in custody *prior to* the issuance of a commitment order when calculating the maximum commitment period under section 1370(c)(1). By contrast, the court is here asked to address the treatment of custodial time *after* a trial court has ruled a defendant incompetent but *before* ruling on a certificate of restoration. As we have explained, this distinction is significant and counsels against relying on *G.H.*'s characterization of the commitment period.[18]

### 5. *We Are Not Persuaded by the People's Remaining Arguments*

The People contend that "absurd and unintended consequences" would result if we were to adopt Rodriguez's interpretation. (See, e.g., *Simpson Strong-Tie Co., Inc. v.*

---

[18] In the course of its decision, *G.H.* stated that "[s]ection 1370, subdivision (c)(1)'s three-year statutory limit applies to the total period actually spent in commitment *at a mental institution.* ([*Polk, supra,*] 71 Cal.App.4th [at p.] 1238 . . . .)" (*G.H., supra,* 230 Cal.App.4th at pp. 1558–1559, italics added.) As amicus curiae have observed, *Polk* in fact makes no mention of any distinction between time spent postcommitment at a treatment facility versus time spent postcommitment in county custody awaiting judicial proceedings following submission of a certificate of restoration. *Polk* held that the maximum statutory period under section 1370(c)(1) applies to "the aggregate of all commitments on the same charges." (*Polk,* at p. 1238.) Nothing in our decision contradicts this holding.

*Gore* (2010) 49 Cal.4th 12, 27 ["we may reject a literal construction that is contrary to the legislative intent apparent in the statute or that would lead to absurd results"].) We address each of the People's arguments in turn.

### a. *"Arbitrarily truncated" time for treatment*

The People contend that if a commitment does not terminate with a filing of a certificate of restoration, time "to provide necessary restoration treatment would . . . be arbitrarily truncated" because medical personnel would need to "predict[] whether the defendant will contest the hospital's certification in the future" and "how much time the defense will require to prepare for such a hearing."

The People's argument implies that medical personnel would take into account the time available until the maximum term of commitment is reached in deciding when and how to provide treatment, instead of expeditiously restoring defendants to competency. But the Department denies it considers such factors when providing treatment, and the People offer no evidence to the contrary.

According to the Department, "[t]he focus of [the Department's] treatment is on restoration of competence in the most expeditious manner possible." (See § 1370, subd. (a)(1)(B)(i) [specifying that the defendant shall receive treatment "that will promote the defendant's speedy restoration to mental competence"].) If the Department is providing services to restore competency "in the most expeditious manner possible," then it should not matter for purposes of treatment if a defendant may be committed for a maximum of two years or a maximum of two years minus the time it takes to conduct the competency hearing under section 1372. In either case, the

Department is extending the treatment necessary to restore competency as soon as possible; it is not basing its treatment on "predict[ions]" of whether the defendant will contest the certification of competency or how much preparation time will be needed if the matter is contested.

b. *"Delays predicated on defense counsel's needs"*

The People further contend that contested competency hearings following the filing of a certificate of restoration are often delayed by defense counsel's need to prepare for the hearings. According to the People, "[i]f this court adopted [Rodriguez's] position, the trial court would have no . . . discretion or control in balancing the needs of defense attorneys to adequately prepare on behalf of their clients with concerns of delay."

An important premise underlying the People's argument is that the time defense counsel need to "adequately prepare" would often push the competency hearings past the time limit set by section 1370(c)(1). The People, however, have not provided any persuasive evidence that a two-year maximum term is likely to be routinely exhausted even when postcertification judicial proceedings are taken into account. Indeed, the available evidence suggests the contrary is true. When the Legislature reduced the maximum period of commitment permitted under section 1370(c)(1) from three years to two years, it noted that "the vast majority (80–90%) [of persons committed as mentally incompetent] becomes trial-competent within six months of starting treatment, and nearly all who attain competency do so within a year." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1187, *supra*, as introduced Feb. 15, 2018, p. 4.) The Department likewise

acknowledges that average "treatment time in a state hospital operated by [the Department is] 270 days before return to court" — well below the two-year limit.[19]

The Department states that "[i]n [its] experience, competency hearings under section 1372 following a certificate of restoration are often delayed, sometimes for a significant length of time." The only examples of delays that the Department offers are those occurring in this case and in *Carr*. But the proceeding here and in *Carr* demonstrate how unusual these delays were.

This case involved extraordinary circumstances relating to the COVID-19 pandemic. As the People themselves acknowledge, "the continuances in th[is] case [including] the final continuance past the two-year mark from the date of commitment, were not due to gamesmanship by either party, or institutional negligence like in *Carr* . . . but rather because of an unprecedented national emergency and the consequences on court capacity that resulted therefrom."

---

[19] To the extent the Department is concerned about running out of time to provide treatment, its concerns appear to be based on defendants who have been certified as competent and yet are "returned to the hospitals for additional competency services." Defendants "returned to the hospital for additional competency services" are those defendants whose certifications of competency have been rejected by a court, or who had again become incompetent in short succession. Although we do not lightly dismiss the Department's concerns that for these defendants the Department will not have a full two-year period in which to provide treatment, ultimately, in setting a maximum term of commitment, the Legislature has accepted that there will be some individuals for whom the allotted time is not enough to restore competency. It is not the role of the courts to second-guess these legislative choices.

As for *Carr*, the defendant there (Carr) spent almost a year in jail waiting to be transported to a state hospital. (See *Carr*, *supra*, 59 Cal.App.5th at pp. 1140–1141.) Then without ever being transported or receiving any treatment, Carr was certified as competent by a Department psychiatrist. (*Id.* at p. 1141.) Carr petitioned for a writ of mandate, claiming that " 'the certification of his competency was employed as a subterfuge to circumvent the state's obligation to place him in a state hospital.' " (*Ibid.*) The Court of Appeal rejected the claim. (*Ibid.*) More than a year later, the trial court concluded that Carr remained incompetent. (*Ibid.*) The court again committed Carr to the Department, and he once more waited for transport to a facility. (*Ibid.*) Three months later, while still waiting for transport, "Carr moved for release on the ground he had completed the maximum three-year commitment [then] authorized by law." (*Ibid.*) This procedural history makes it difficult to infer that delays in holding competency hearings are often so lengthy that the two-year limit is likely to be exceeded in the normal course.

More generally, neither the facts of this case nor those in *Carr* support the assertion that defendants have the incentive to, and routinely, engage in dilatory tactics. As mentioned, the People acknowledge that the delays that occurred in this case were not attributable to "gamesmanship" by Rodriguez. The court in *Carr* likewise noted that "there is no basis in this case to infer Carr's efforts to oppose the certification contributed to his commitment exceeding the three-year maximum." (*Carr*, *supra*, 59 Cal.App.5th at p. 1146.) If a trial court is concerned that a defendant is requesting continuances for the sole purpose of exhausting the two-year period, the court may take that into consideration when determining whether to grant a

continuance. (Cf. *Camacho*, *supra*, 15 Cal.5th at p. 368 ["underscor[ing] the vital role of trial courts in safeguarding the timely trial right of alleged [sexually violent predators]"].)

Finally, the People's argument assumes that litigation delays attributable to the defense cannot be excluded when determining whether the two-year period has run out. We do not decide whether that assumption is correct. (See pt. II.C., *post*.)

### c. *"Competent defendants evading prosecution"*

The People contend that adopting Rodriguez's interpretation would "result in presumptively competent defendants evading prosecution" because once section 1370(c)(1)'s limit has been reached, a defendant must be conserved or released. In its amicus curiae brief, the San Diego County District Attorney goes further, arguing that "dangerous criminals" will be released "to the streets." The statutory scheme, however, provides safeguards against these results.

Individuals whose commitment terms have expired need not be released to the community. Instead, they may be civilly committed, including to long-term conservatorships. (See § 1370, subds. (c)(3), (e); *Waterman*, *supra*, 42 Cal.3d at p. 568 & fn. 1.) Specifically, a Murphy conservatorship is available to keep in custody a criminal defendant who is incompetent to stand trial and who may not be further committed under section 1370. (See § 1370, subd. (c)(3).) An incompetent defendant may be conserved under a Murphy conservatorship if, among other criteria, the defendant "represents a substantial danger of physical harm to others." (Welf. & Inst. Code, § 5008, subd. (h)(1)(B)(iv).) The conservatorship may last as long as the conditions supporting conservatorship persist. (See Welf. &

Inst. Code, § 5361, subd. (b); *Hofferber*, *supra*, 28 Cal.3d at p. 170; Parker, *supra*, 6 Pacific L.J. at pp. 485, 497.) Accordingly, it is not the case that "dangerous persons" are simply released "to the streets" if they are not committed under section 1370. Even when an incompetent criminal defendant is not conserved and felony charges are dismissed, the People may refile charges if they believe the defendant has regained competency. (See *Jackson v. Superior Court*, *supra*, 4 Cal.5th at p. 106 [holding that "a defendant may be rearrested, and a trial court may order a new competency hearing, following the prosecution's dismissal and refiling of felony charges pursuant to section 1387 even if the defendant was previously committed for three years"].)

Finally, the People's argument assumes that when the two-year period runs out, even a defendant who has been certified as restored to competence must be released. We do not decide whether that assumption is correct either. (See pt. II.C., *post*.)

### C. Issues to Address on Remand

As previously noted, Rodriguez was initially returned to the trial court pursuant to a timely-filed certificate of restoration to competency. (See § 1372, subd. (a)(1), (3).)

We have decided the issue of statutory interpretation presented, concluding that section 1370(c)(1)'s two-year maximum commitment period continues past the filing of the certificate, through the court's decision whether to accept the

certificate.[20] We are not deciding, however, whether the two-year maximum commitment period was reached here as a result of Rodriguez's aggregate periods of commitment. We instead leave that question for the Court of Appeal to address on remand.

Because the Court of Appeal concluded that section 1370(c)(1)'s two-year period had not run out, it did not need to reach whether Rodriguez was otherwise entitled to his requested remedy. It did not need to decide whether Rodriguez would have been entitled to dismissal if the period *had* run out. It did not need to decide whether expiration of the maximum commitment period under section 1370(c)(1) mandates release where the defendant is competent to stand trial. The issue of what remedy is available when section 1370(c)(1)'s two-year period has run out — including whether release or conservatorship are the only appropriate remedies — was not briefed here.

We therefore conclude these issues merit consideration on remand to the Court of Appeal. The appellate court may decide in the first instance what remedy exists if the two-year time limit has been reached — either as a matter of statutory interpretation or as a constitutional matter. (Cf. *Jackson v. Superior Court, supra*, 4 Cal.5th at p. 106; *Camacho, supra*, 15 Cal.5th at pp. 378–379, 382 & fn. 5 [noting that courts in other contexts have suggested there may be other possible

---

[20] Because we reach this conclusion based on a reading of the statutes, we do not address Rodriguez's argument that a holding for the People here would violate constitutional principles of "due process, equal protection, effective assistance of counsel, and proscriptions on cruel and unusual punishment."

remedies for unconstitutional delay, such as an order that proceedings commence forthwith].)

Similarly, we remand to the Court of Appeal to address whether section 1372 hearings may be continued upon good cause such that the period between continuances is tolled for purposes of calculating whether the maximum commitment term under section 1370(c)(1) has been reached. Stated differently, we do not address here whether the two-year clock of section 1370(c)(1) can be paused by good cause continuances that may arise during the period between a defendant's return to court and the trial court's determination of competence. Although the issue is mentioned in the parties' briefing before us, neither the trial court nor the Court of Appeal ruled on it.[21] This issue is best addressed in the context of the other issues that remain to be decided in the first instance by the Court of Appeal. (See Cal. Rules of Court, rule 8.516(b)(3).)

We express no view on whether Rodriguez has reached the maximum two-year commitment period; whether Rodriguez is entitled to the remedy of dismissal he seeks; or whether and how

---

[21] We briefly acknowledge the arguments the parties have made for and against the availability of such tolling in this context. Rodriguez argues that "[c]ontinuances and waivers are not authorized by sections 1370 and 1372, so the courts cannot read into the statutes what has 'been omitted.'" The People, on the other hand, counter that tolling, like many of the procedures governing a section 1372 hearing, may be considered "implied" by the statutes.

the issue of tolling may affect Rodriguez's entitlement to any relief.[22]

## III. CONCLUSION

We hold that an incompetency commitment does not end with the filing of a certificate of restoration. Instead, the two-year maximum commitment period set by Penal Code section 1370(c)(1) continues past the filing of the certificate and includes the time between such filing and the court's decision whether to accept the certificate. Accordingly, we reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion.

Upon remand, the court shall consider whether the two-year limit of section 1370(c)(1) was exceeded in this case. To answer that question, the court may consider whether good cause continuances can toll the limit of section 1370(c)(1). (Cf. *Camacho, supra,* 15 Cal.5th at pp. 378–379.) If the court finds that the two-year statutory period has indeed been exceeded, it shall further consider the nature of the remedy Rodriguez is entitled to at this point. In particular, the court should examine whether Rodriguez is entitled to dismissal of the charges pending against him or whether other relief is appropriate. (Cf. *Camacho,* at p. 382, fn. 5; *Jackson v. Superior Court, supra,* 4 Cal.5th at p. 106 [holding that "a defendant may be rearrested, and a trial court may order a new competency hearing, following the prosecution's dismissal and refiling of felony charges pursuant to section 1387 even if the defendant was previously

---

[22] This court's decision to issue a stay in connection with granting Rodriguez's petition for review should not be understood to resolve the question whether Rodriguez is entitled to the relief he seeks.

committed for [the statutory maximum period permitted by section 1370(c)(1)]”].)

**GUERRERO, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Rodriguez v. Superior Court

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 70 Cal.App.5th 628
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S272129
**Date Filed:** December 14, 2023

---

**Court:**  Superior
**County:**  Santa Clara
**Judge:**  Eric S. Geffon

---

**Counsel:**

Brian C. McComas, under appointment by the Supreme Court, for Petitioner.

Ellen McDonnell, Public Defender (Contra Costa), and Diana Garrido, Deputy Public Defender, for Contra Costa County Public Defender Office and California Public Defenders Association as Amici Curiae on behalf of Petitioner.

Emi MacLean and Kim Pederson for American Civil Liberties Union Foundation of Northern California and Disability Rights California as Amici Curiae on behalf of Petitioner.

DLA Piper and Justin R. Sarno for Silicon Valley De-Bug as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Jeffrey F. Rosen, District Attorney, Alexandra W. Gadeberg, Crystal Tindell Seiler and Barbara A. Cathcart, Deputy District Attorneys, for Real Party in Interest.

Summer Stephan, District Attorney (San Diego), Linh Lam and Jennifer Kaplan, Deputy District Attorneys, for the San Diego County District Attorney as Amicus Curiae on behalf of Real Party in Interest.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown and Kevin L. Quade, Deputy Attorneys General, for State Department of State Hospitals and State Department of Developmental Services as Amici Curiae on behalf of Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Brian C. McComas
The Law Office of B.C. McComas, LLP
PMB 1605, 77 Van Ness Avenue, Suite 101
San Francisco, CA 94102
(415) 814-2465

Emilou MacLean
American Civil Liberties Union Foundation of Northern California
39 Drumm Street
San Francisco, CA 94111-4805
(929) 375-1575

Alexandra W. Gadeberg
Deputy District Attorney
70 West Hedding, West Wing
San Jose, CA 95110
(408) 792-2757